Carol Lynn Thompson (SBN 148079)
cthompson@sidley.com
Wesley Chao (SBN 324077)
wchao@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1291
Facsimile: (415) 772-7400

Attorneys for Defendants Joseph Cayre and
Brams Jacob Moyal

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HSM HOLDINGS, LLC, a Delaware limited liability company, | Case No. 3:19-cv-04391-TSH |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8, 9(b), 12(b)(2), 12(b)(3) and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| MANTU I.M. MOBILE LTD., an Israeli limited company, BEEZZ COMMUNICATIONS SOLUTIONS LTD, an Israeli limited company, ERAN BEN ELIEZER, JOSEPH CAYRE, GAVRIEL GEORGE NIRYAEV, DENIS JDANOV, ERAN HAMO, MICHAEL RASKANSKY, and BRAMS JACOB MOYAL, | Honorable Thomas S. Hixson |
| Defendants. | Date:  September 26, 2019 Time:  10:00 a.m. Courtroom A, 15th Floor |

**NOTICE OF MOTION.**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that, on September 26, 2019, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Thomas S. Hixson, in Courtroom A, 15th Floor of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendants Joseph Cayre and Brams Jacob Moyal will and hereby do move this Court to dismiss with prejudice the Complaint of Plaintiff HSM Holdings LLC, pursuant to Rules 8(a), 9(b), 12(b)(2),12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is made on the following grounds, which are explained more fully in the attached Memorandum of Points and Authorities:

First, this Court is not the proper forum for resolution of Plaintiff's claims and the action either should be transferred to New York pursuant to 28 U.S.C. §1404 or should be dismissed pursuant to Federal Rule Civ. Proc. 12(b)(3). Plaintiff's claims alleging that it was fraudulently induced to enter into the Share Subscription Agreement are not properly resolved in this Court because the Agreement contains a forum selection clause mandating New York. Plaintiff's remaining claims – challenging Defendants' alleged obligations to Plaintiff as a shareholder – should be dismissed on *forum non conveniens* grounds because there is an adequate alternative forum, Israel, and the balance of private and public factors weighs in favor of that foreign forum.

Second, Plaintiff's fraud claims – first, second, third and fourth causes of action – are not plead with particularity as required by Rule 9(b).

Third, Plaintiff cannot state fraud claims because the non-reliance clause in the Share Subscription Agreement renders Plaintiff's purported reliance on the alleged misrepresentations unreasonable as a matter of law and so the first, second, third and fourth Causes of Action should be dismissed pursuant to Rule 12(b)(6).

Fourth, Plaintiff's claims for fraud, fraudulent concealment and negligent misrepresentation are time-barred because they were not filed within the three year limitations period and so should be dismissed pursuant to Rule 12(b)(6).

Fifth, Plaintiff cannot state a claim for relief relating to its share purchase under Cal. Bus. &

1

Prof. Code Section 17200 because Plaintiff's claims are governed by New York law.

Sixth, Plaintiff has not alleged facts establishing the existence of a fiduciary relationship between Plaintiff and Defendants Cayre and Moyal, nor facts amounting to a breach of fiduciary duty.

Seventh, Plaintiff cannot state a claim for voidable transfer under Cal. Civ. Code Section 3439 because Plaintiff is a shareholder and not a creditor of Mantu, and because the purported voidable transfer did not occur after Plaintiff's alleged claim arose.

Eighth, Plaintiff's claim for restitution should be dismissed because restitution is an equitable remedy and not a standalone claim.

Ninth, the claims against Defendants Cayre and Moyal should be dismissed pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over Defendants.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the attached Declarations of Joseph Cayre, Brams Jacob Moyal and Gavriel George Niryaev and the exhibits thereto, the pleadings on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT. ....................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND. ....................................................2

III. PLAINTIFF'S CLAIMS CANNOT BE RESOLVED IN THIS COURT
     AND THE ACTION EITHER SHOULD BE TRANSFERRED TO THE
     SOUTHERN DISTRICT OF NEW YORK OR ALTERNATIVELY SHOULD
     BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS. ......................5

     A.   Plaintiff's First Through Fourth Claims Relating to the
          Subscription Agreement Must Be Resolved In New York
          Pursuant to the Forum Selection Clause. ..............................................5

     B.   Alternatively, Plaintiff's Action Should Be Dismissed on
          *Forum Non Conveniens* Grounds. .......................................................7

          1.   There Is An Adequate Alternative Available Forum. ....................8

          2.   Israel Is A More Convenient Forum For the Resolution
               of Plaintiff's Claims Challenging the Companies' Conduct
               and Alleging Breach of Fiduciary Duty. .................................9

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF
     CAN BE GRANTED. ...........................................................................11

     A.   Pleading Standards Under Rules 8(a), 9(b) and 12(b)(6) .......................11

     B.   Plaintiff's Fraud Claims Fail to Meet Rule 9(b) Pleading Standards. ......11

     C.   Plaintiff's Fraud Claims (First, Second, Third and Fourth Causes of Action)
          Must Be Dismissed Because It Cannot Prove Reliance. ..........................13

     D.   Plaintiffs' Fraud Claims (First, Second and Third Causes of Action)
          Are Time-Barred And Should Be Dismissed. ........................................14

     E.   Plaintiff's Fourth Cause of Action for Violation of
          Cal. Bus. & Prof. Code Section 17200 Should Be Dismissed
          Because Plaintiff Cannot Assert Claims Under California Law. ................16

     F.   Plaintiff Fails to State A Claim for Breach of Fiduciary Duty. ................16

     G.   Plaintiffs' Civil Code Section 3439 Voidable Transfer Claim
          Must Be Dismissed. .......................................................................17

     H.   Restitution Is Not a Standalone Claim and Plaintiff's
          Eighth Claim should be Dismissed. ....................................................18

V.   THE CLAIMS AGAINST DEFENDANT CAYRE SHOULD
     BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ......................19

i

A.     The Court Cannot Exercise General Jurisdiction Over
       Defendants Cayre and Moyal. ...........................................................19

B.     The Court Cannot Exercise Specific Jurisdiction Over
       Defendants Cayre and Moyal. ..........................................................20

       1.     Cayre and Moyal Have Not Purposefully Availed Themselves
              of the Benefits of the Forum or Directed Their Activities
              Toward California...........................................................20

       2.     This Action Does Not Arise From Defendants'
              Forum-Related Activities .................................................21

       3.     This Court's Exercise of Personal Jurisdiction
              Would Be Unreasonable ...................................................21

VI.    CONCLUSION. ......................................................................22

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 8, 9(b), 12(b)(2), 12(b)(3) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996)................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................11

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013) ......................................................................................3, 5

*Ayco Farms, Inc. v. Ochoa*,
    862 F.3d 945 (9th Cir. 2017)...........................................................................7

*Bank of Am. Corp. v. Lemgruber*,
    385 F. Supp. 2d 200 (S.D.N.Y. 2005) ...........................................................17

*Bank of the W. v. Valley Nat'l Bank of Ariz.*,
    41 F.3d 471 (9th Cir. 1994).............................................................................14

*Batchelder v. Kawamoto*,
    147 F.3d 915 (9th Cir. 1998)............................................................................7

*Bauer v. Comm'r*,
    748 F.2d 1365 (9th Cir. 1984)........................................................................18

*Benham v. Aurora Loan Servs.*,
    2009 WL 2880232 (N.D. Cal. Sept. 1, 2009) ................................................13

*Brainerd v. Governors of the Univ. of Alberta*,
    873 F.2d 1257 (9th Cir.1989)..........................................................................19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .......................................................................................21

*Claxton v. Bowes*,
    2013 WL 1290806 (E.D. Wash. Mar. 26, 2013)............................................14

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F. 3d 1482 (9th Cir. 1993)..........................................................................21

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010).........................................................................14

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir.1977).........................................................................19

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)................................................................12

*Doe v. Roman Catholic Bishop of Sacramento*,
    189 Cal. App. 4th 1423 (2010)...........................................................14

*FMC Techs., Inc. v. Edwards*,
    302 F. App'x 577 (9th Cir. 2008).......................................................14

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011).................................................18

*Goodyear Dunlop Tires Operations, SA v. Brown*,
    564 U.S. 915 (2011)...........................................................................20

*Gulf Oil Co. v. Gilbert*,
    330 U.S. 501 (1947).............................................................................8

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016).......................................................13

*Haynsworth v. The Corp.*,
    121 F.3d 956 (5th Cir. 1997)................................................................7

*Hylwa, M.D., Inc. v. Palka*,
    823 F.2d 310 (9th Cir. 1987)..............................................................19

*Kalmanovitz v. Standen*,
    2015 WL 12939339 (W.D. Wash. Dec. 9, 2015)...........................20, 21

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)............................................................13

*KVOS, Inc. v. Assoc. Press*,
    299 U.S. 269 (1936)...........................................................................19

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001)..............................................................8

*Manetti-Farrow Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988).............................................................5, 6

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007)............................................................22

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
    69 F.3d 1034 (9th Cir. 1995)................................................................6

*N.L.R.B. v. Don Burgess Constr. Corp.*,
    596 F.2d 378 (9th Cir. 1979)..............................................................15

1

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013).................................................................................11

*Newsom v. Countrywide Home Loans, Inc.*,
    714 F. Supp. 2d 1000 (N.D. Cal. 2010)..................................................................13

*Overseas Media, Inc. v. Skvortsov*,
    441 F. Supp. 2d 610 (S.D.N.Y. 2006) ......................................................................8

*Panavision Int'l LLP v. Toepper*,
    141 F.3d 1316 (9th Cir. 1998)................................................................................21

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
    139 F.3d 1061 (5th Cir. 1998)..................................................................................6

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ...............................................................................................10

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015).................................................................................10

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012).....................................................................................3

*Schuster v. Gardner*,
    127 Cal. App. 4th 305 (2005)..................................................................................17

*Snowney v. Harrah's Entm't, Inc.*,
    35 Cal. 4th 1054 (2005) ..........................................................................................19

*Tahan v. Hodgson*,
    662 F.2d 862 (D.C. Cir. 1981) ................................................................................11

*Trans v. Bank*,
    2012 WL 12894838 (C.D. Cal. Oct. 29, 2012) ......................................................12

*In re U. S. Fin. Inc.*,
    648 F.2d 515 (9th Cir. 1980)...................................................................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003).................................................................................11

*Westinghouse Elec. Corp. v. City of Burlington, Vt.*,
    351 F.2d 762 (D.C. Cir. 1965).................................................................................15

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013)..................................................................11

2

**STATUTES & RULES**

28 U.S.C. § 1404 ........................................................................................... 1, 3, 19

28 U.S.C. § 1404(a) ........................................................................................ 3, 5, 23

Cal. Bus. & Prof. Code § 17200 ................................................................... 4, 6, 16

Cal. Civ. Code § 3439 ................................................................................... 4, 17, 18

Cal. Civ. Code § 3439.01(c) .......................................................................... 18

Cal. Civ. Code § 3439.05 .............................................................................. 18

Cal. Civ. Proc. Code § 338 ........................................................................... 14

Fed. R. Civ. P. 8 ........................................................................................... 23

Fed. R. Civ. P. 8(a)(2) .................................................................................. 11

Fed. R. Civ. P. 9(b) ...................................................................................... 2, 11, 13

Fed. R. Civ. P. 12(b)(2) ................................................................................ 19, 22, 23

Fed. R. Civ. P. 12(b)(3) ................................................................................ 1, 3, 7, 22

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 3, 14, 23

Fed. R. Civ. P. 4(e) ...................................................................................... 5

**FOREIGN AUTHORITIES**

C.A. 8712/13 *Adler v. Livnat*, of 01.09.2015, Published in Nevo.  And, Article 75 of the Courts Law
     [Integrated Version], 1984 ..................................................................... 9

C.A. (Tel Aviv Economic Department) 1963-05-11 *AVA Financial Ltd. v. Malka*, of 13.09.2011,
     Published in Nevo ................................................................................. 9

C.A. (Tel Aviv Economic Department) 28598-01-13 *Tisch v. Yogev*, of 13.03.2016, Published in
     Nevo ...................................................................................................... 9

Israeli Cos. Law, 1999, art. 191(a) ............................................................... 9

Israeli Cos. Law, 1999, art. 192 ................................................................... 8, 10

Israeli Cos. Law, 1999, art. 193 ................................................................... 8

Israeli Cos. Law, 1999, art. 252(a) ............................................................... 8

Israeli Cos. Law, 1999, art. 254 ................................................................... 8

3

1

Israeli Courts Law § 42B(3) ............................................................................................9

2

Israeli Tort Ord., art. 35 ..................................................................................................8

3

Israeli Tort Ord., art. 56 ..................................................................................................8

4

Originating Motion (Tel Aviv Economic Department) 36108-07-15 *Trelov v. Ludmir*, of
    19.07.2015, Published in Nevo ...................................................................................9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 8, 9(b), 12(b)(2), 12(b)(3) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES.

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiff's Complaint asserts a host of inherently contradictory claims none of which belong in this Court.  Plaintiff HSM Holdings LLC ("Plaintiff" or "HSM") is a sophisticated entity that made an investment in 2015 in Defendant Mantu I.M. Mobile Ltd. ("Mantu"), an Israeli technology start-up company, that was developing encryption technology.  Plaintiff apparently was disappointed with the speed with which Mantu's encryption platform was brought to market and the company's ultimate ability to commercialize it.  Plaintiff attempts to rescind its investment four years later by alleging fraud premised on certain oral misrepresentations that Defendants allegedly made about the prospects for Mantu's technology.  In the alternative, Plaintiff asserts that Mantu is essentially the alter ego of another more successful Israeli company, Beezz Communications Solutions Ltd. ("Beezz") founded two years earlier by many of the same Defendants, and seeks to have Plaintiff's Mantu shares converted to Beezz shares.  Plaintiff's Complaint, and all of the claims asserted in it, should be dismissed for the following reasons.

First, Plaintiff's action cannot proceed in this Court.  Plaintiff's investment in Mantu was made pursuant to a Share Subscription Agreement (deliberately omitted from Plaintiff's Complaint) that contains a forum selection clause mandating that any action relating to that Agreement be brought in the state or federal courts of New York.  The majority of Plaintiff's claims relate to the share purchase and must be brought in New York so that the Court should transfer this action pursuant to 28 U.S.C. Section 1404.

Alternatively, even if Plaintiff's claims were not subject to a valid and enforceable forum selection clause, this action is subject to dismissal under Rule 12(b)(3) on *forum non conveniens* grounds.  Israel is an adequate available forum that provides Plaintiff with remedies for the purported wrongdoing alleged in the Complaint and would be a more efficient and equitable forum given that the companies – Mantu and Beezz – are Israeli limited companies governed by Israeli corporate law, all of their officers and employees who will be essential witnesses are residents of Israel, all documents (many of which are in Hebrew) are located in Israel, and the locus of the challenged activities is Israel.

1

Second, Plaintiff's fraud claims – the first through fourth causes of action – fail to state a claim. The Complaint fails to satisfy Rule 9(b) pleading standards because Plaintiff fails to allege the who, what, where and when of the purported fraud. Indeed, the Complaint is entirely devoid of any substantive allegations with respect to many of the individual Defendants and as to Defendants Cayre and Moyal does not even allege the content of specific misrepresentations, where and how those representations were made, or when they were made by these Defendants.

Plaintiff's fraud claims also are subject to dismissal under Rule 12(b)(6) because Plaintiff cannot establish reliance as a matter of law. In the Share Subscription Agreement, Plaintiff – a sophisticated investor – expressly acknowledged that it had not relied on any statements that were not included in that Agreement. None of the purported misrepresentations alleged in the Complaint are included in the Share Subscription Agreement. And, even if not precluded by the non-reliance clause, Plaintiffs' fraud claims are time-barred by the three year statute of limitations given that Plaintiff knew long before filing its Complaint that Mantu's technology was not ready to launch and that the purported customer contracts had not materialized.

Third, Plaintiff's remaining claims premised on its status as a shareholder assert inconsistent theories against the Defendant companies and their officers and shareholders. On the one hand, Plaintiff seeks a declaration that Mantu and Beezz are corporate alter egos so that it can be awarded shares of Beezz. Yet, on the other hand, Plaintiff asserts breach of fiduciary duty and voidable transfer claims premised on the purported transfer of funds from Mantu to Beezz which are only wrongful to the extent the companies are separate and distinct corporate entities. Those causes of action are not only inconsistent, but should be dismissed for failure to state a claim. Plaintiff fails to allege facts establishing that the Defendants owed Plaintiff a fiduciary duty or engaged in any wrongful conduct that breached such a duty. Plaintiff also cannot bring a voidable transfer claim because it is a shareholder and not a creditor of Mantu.

Finally, Plaintiff's restitution claim should be dismissed since it is not a standalone claim, but a remedy.

## II.  FACTUAL AND PROCEDURAL BACKGROUND.

Mantu is an Israeli limited company, founded in 2015, by defendants Eliezer, Niryaev,

2

Jdanov, Hamo and Raskansky whom are all Israeli citizens and residents.  Declaration of Gavriel George Niryaev ("Niryeav Decl.") ¶ 2.  Mantu provides an encrypted communications platform to companies and government entities ensuring secure peer to peer communications.  *Id.* Defendants Cayre and Moyal are residents of New York and are shareholders of Mantu.  Complaint for Damages ("Cmpl.") ¶¶ 7 and 13.

Beezz is an Israeli limited company, founded in 2013, also by defendants Eliezer, Niryaev, Jdanov, Hamo and Raskansky.  Niryaev Decl. ¶ 3.  Beezz developed and provides an IoT security solution that is different than but synergistic with the technology offered by Mantu.  *Id.*

Plaintiff HSM Holdings LLC ("Plaintiff" or "HSM") is a Delaware limited liability company with a California principal place of business.  Cmpl. ¶ 4.  In 2015, Plaintiff entered into a Share Subscription Agreement with Mantu pursuant to which it agreed to invest $4 million in exchange for 4,414 shares, representing roughly 8% of Mantu.[1]  Niryaev Decl. ¶ 3, Exhibit A (Share Subscription Agreement).  The Share Subscription Agreement provides that HSM "has not received or relied upon any representations, warranties or assurances of or from the Company or any persons acting on its behalf" apart from the statements made in the Agreement.  *Id.* ¶ 2.  The Subscription Agreement is governed by New York law and contains a forum selection clause mandating that any action "under or in relation to" the Agreement shall be brought in state or federal court in New York.  *Id.* at p. 2.

Plaintiff simultaneously entered into a Commission Agreement pursuant to which Plaintiff agreed to identify and solicit potential customers in exchange for which Plaintiff would earn a 20%

---

[1] The Subscription Agreement is attached to the Niryaev Declaration as Exhibit A.  The Court can consider the Subscription Agreement and any other relevant evidence in ruling on a motion to dismiss pursuant to Rule 12(b)(3).  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  The Court also must consider the Subscription Agreement in assessing a Section 1404 motion to transfer premised on a forum selection clause.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62-63 (2013) ("[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis," and "a district court should ordinarily transfer the case to the forum specified in that clause").  Finally, the Court may consider the Subscription Agreement in ruling on Defendant's motion to dismiss pursuant to Rule 12(b)(6) because the Complaint specifically refers to the existence and contents of that Agreement and so it is incorporated by reference, *see, e.g.*, paragraph 22.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (holding that a court deciding on a 12(b)(6) motion to dismiss is "generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which [the court] may take judicial notice").

cash commission, up to a maximum of $4 million.  Cmpl. ¶ 23.

Plaintiff alleges that it was induced to invest in Mantu based on Defendants' misrepresentations that Mantu's encryption platform would soon be brought to market and that there were a number of potential customers that were ready to purchase that platform once deployed.  *Id.* ¶¶ 17–18.  Defendants also allegedly misrepresented that Mantu had negotiated customer contracts and made sales presentations to potential customers.  *Id.* ¶ 35.  Plaintiff alleges that for more than two years, Defendants provided false updates regarding the development of Mantu's technology and the path to commercialization.  *Id.* ¶ 33.  Mantu also allegedly diverted a substantial portion of HSM's investment – as much as $3 million – to Beezz which Plaintiff contends is not a distinct company, but a mere alter ego of Mantu because their financial assets and affairs allegedly are commingled.  *Id.* ¶¶ 26–29.

Plaintiff alleges that he did not discover Defendants' alleged misrepresentations and improper conduct until 2019.  *Id.* ¶ 38.  After repeatedly questioning the delay in Mantu's customer product launch, Plaintiff alleges that Defendant Cayre purportedly disclosed that HSM's investment was misappropriated by Beezz and one of Mantu's co-CEOs further admitted that the two companies were alter egos.  *Id.* ¶ 39.

Based on these allegations, Plaintiff filed its complaint on June 26, 2019 in Alameda County Superior Court.  The Complaint alleges claims for (1) fraud and deceit; (2) fraudulent concealment; (3) negligent misrepresentation; (4) unlawful business practices under California Business & Professions Code Section 17200; (5) breach of fiduciary duty; (6) declaratory judgment; (7) voidable transfer under California Civil Code Section 3439; and (8) restitution for unjust enrichment.  Plaintiff seeks actual and punitive damages or, in the alternative, rescission of the Share Subscription Agreement and refund of its $4 million investment, or in the alternative, that HSM be awarded shares in Beezz with a present value equivalent to $4 million.

Defendant Cayre was purportedly served on July 15, 2019 and on July 31, 2019, removed the action to the Northern District of California.  Defendant Moyal has not yet been properly

served.[2]  Defendants now move to dismiss on a number of grounds.

### III. PLAINTIFF'S CLAIMS CANNOT BE RESOLVED IN THIS COURT AND THE ACTION EITHER SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK OR ALTERNATIVELY SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS.

Plaintiff's claims do not belong in this Court.  Plaintiff explicitly agreed that any disputes relating to the Share Subscription Agreement – and Plaintiff's first through fourth claims clearly relate to that agreement  – would be resolved in New York under New York law.  Moreover, even if Plaintiff had not already agreed to a different forum for its claims relating to the Share Subscription Agreement, Plaintiff's claims alternatively are more appropriately resolved in Israel which is an adequate available forum that presents a more convenient and fair location for the resolution of the parties' disputes and that is better suited to resolve the essential legal and factual questions presented.

#### A. Plaintiff's First Through Fourth Claims Relating to the Subscription Agreement Must Be Resolved In New York Pursuant to the Forum Selection Clause.

In diversity cases, federal law governs the effect and scope of a forum selection clause. *Manetti-Farrow Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  A forum selection clause may be enforced by a motion to transfer venue under 28 U.S.C. Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to which all parties have consented."  *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52, 59 (2013) (citations, quotations omitted).  A valid forum selection clause is "'given controlling weight in all but the most exceptional cases,'" and, when the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  *Id.* at 59–60 (quoting *Stewart Org., Inc. v. Ricoh Corp*, 487 U.S. 22, 33 (1988)). Such clauses are presumed valid and should be honored absent a strong showing by the party opposing enforcement "that enforcement would be unreasonable or unjust or that the clause is invalid for such

---

[2] Both Defendant Cayre and Defendant Moyal contend that they were not properly served pursuant to Fed. Rule Civ. Proc. 4(e).  Plaintiff attempted to serve Defendant Cayre by delivery of the Complaint to his secretary, and attempted to serve Defendant Moyal at his home when he was not there. Neither is a valid method of service.

5

reasons as fraud or overreaching." *Manetti-Farrow Inc.*, 858 F.2d at 514.

Here, the Subscription Agreement contains a forum selection clause stating that:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York.  The parties agree that any action brought by either party under or in relation to this Agreement, including, without limitation, to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in the borough of Manhattan, New York City.

Niryaev Decl., Exhibit A p. 2.  The forum selection clause is mandatory.  It states that an action relating to the Agreement "shall be brought in" state or federal court in New York City.  *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) ("To be mandatory, a [forum selection] clause must contain language that clearly designates a forum as the exclusive one.").  Moreover, forum selection clauses – like this one – covering claims "relating to" an agreement are broad in scope.  *See Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

The majority of Plaintiff's claims indisputably arise "in relation to" the Share Subscription Agreement and so are subject to the forum selection clause.  Plaintiff's fraud claims are all premised on Plaintiff's purchase of shares in Mantu.  Plaintiff's first cause of action alleges that Defendants engaged in fraud and deceit to induce HSM to purchase shares of Mantu.  Compl. ¶¶ 49, 51.  Plaintiff's second cause of action for fraudulent concealment likewise alleges that Defendants concealed material information to induce HSM to purchase the shares and enter into the Share Subscription and Commission agreements.  *Id.* ¶ 62.  Plaintiff's third cause of action for negligent misrepresentation similarly points to the alleged material misrepresentations that purportedly induced the share purchase, *Id.* ¶ 66, as does the fourth cause of action alleging fraudulent conduct in violation of Section 17200 of the Business & Professions Code.  And, Plaintiff's eighth cause of action for restitution seeks to recover the $4 million that Defendants obtained through the Share Subscription Agreement. *Id.* ¶ 95.

The Complaint does not allege that enforcement of the forum selection clause would be unreasonable or unjust.  Indeed, Plaintiff deliberately failed to attach the Share Subscription

Agreement or even acknowledge the existence of a binding forum selection clause in its Complaint. While Plaintiff alleges that Defendants made fraudulent representations to induce its investment, Plaintiff does not allege that it was deceived about the purpose or effect of the forum selection clause in the Share Subscription Agreement.  Courts have consistently rejected arguments for a general fraud exception to an otherwise valid forum selection clause.  Rather, "to escape a forum selection clause on the grounds of fraud, [the party] must show that the inclusion of that clause in the contract was the product of fraud or coercion."  *Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) (citations, quotations omitted); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) ("the claims of fraud or overreaching must be aimed straight at the [forum selection clause] in order to succeed" and "allegations of such conduct as to the contract as a whole  . . . are insufficient").

Nor could Plaintiff make any such showing.  Plaintiff and its manager, Sam Hirbod who executed the agreement, are sophisticated investors.  Plaintiff expressly warranted in the Share Subscription Agreement that it had sufficient knowledge and experience in financial matters to evaluate the risks and merits of the share purchase.  Moreover, Plaintiff was represented by counsel in connection with the negotiation of the Share Subscription Agreement.  Niryaev Decl. ¶ 5.

Accordingly, the action should be transferred to the Southern District of New York because the majority of Plaintiff's claims are subject to the forum selection clause.

**B.     Alternatively, Plaintiff's Action Should Be Dismissed on *Forum Non Conveniens* Grounds.**

Alternatively, this action should be dismissed on *forum non conveniens* grounds.  Federal courts have discretion to dismiss an action pursuant to Rule 12(b)(3) under the doctrine of *forum non conveniens* where the defendant establishes "(1) the existence of an adequate alternative forum and (2) that the balance of private and public interest factors favors dismissal."  *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 948 (9th Cir. 2017), *quoting Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009).  The Supreme Court has identified a number of public and private interest factors guiding this analysis.  The private factors include the "relative ease of access to sources of proof; availability of compulsory process and the cost for obtaining attendance of unwilling [witnesses;] . . . and other practical problems that make trial easy [and] expeditious . . .

and the enforceability of judgment." *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947).  The public factors include court congestion, the local interest in having localized controversies decided at home, resolving the case in the forum with the law governing the action, avoiding problems with conflict of laws or applying foreign law, and the unfairness of burdening jurors in an unrelated forum.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1148 (9th Cir. 2001).

Here, these factors weigh against resolving this matter in California and in favor of resolving Plaintiff's claims in Israel.  Plaintiff's claims – alleging that Defendants misrepresented Mantu's development stage and customer relationships, seeking a declaration that Mantu and Beezz are alter-egos, seeking to compel the issuance of Beezz shares to Plaintiff, and asserting that the Company and other shareholders violated fiduciary duties owed to Plaintiff as a minority shareholder – can be most efficiently and fairly resolved in Israel.  "[W]here the preferred venue is a foreign tribunal," the court should dismiss the action.  *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 614–15 (S.D.N.Y. 2006).  Accordingly, the Court should dismiss this action and Plaintiff can decide which claims it wishes to pursue in a different more appropriate forum.

## 1.    There Is An Adequate Alternative Available Forum.

Israel is an adequate alternative forum for the resolution of Plaintiff's claims.  Israeli law provides a remedy for purported fraud, including claims asserting fraudulent inducement or negligent misrepresentation.  *See, e.g.*, Tort Ordinance Articles 35 and 56 (negligence and fraudulent inducement).  Moreover, Israeli law governs Plaintiff's claims seeking a determination that Defendants breached fiduciary duties owed to Plaintiff as a minority shareholder and abused their control over Mantu, a declaration that Mantu and Beezz are alter egos, and that Mantu's property was unlawfully transferred to Beezz.  Mantu and Beezz are Israeli companies and their obligations to shareholders as well as the obligations owed by majority shareholders to minority shareholders are governed by Israeli law which provides a remedy for purported breaches of such duties.  *See, e.g.*, Israeli Companies Law, 1999, Articles 192 (shareholder obligations), 193 (controlling shareholders), 252(a) (duty of care of directors and officers), and 254 (duty of loyalty).

Israel's court system provides an effective forum for resolution of claims, like these,

involving Israeli companies and the corporate formalities governing such companies as well as the rights of minority shareholders and the purported abuse of corporate control.  The Economic Department of the Tel Aviv District Court ("Tel Aviv Economic Department") hears claims, like those raised in the Complaint, challenging investment and contract disputes.  *See, e.g.*, C.A. (Tel Aviv Economic Department) 28598-01-13 *Tisch v. Yogev*, of 13.03.2016, Published in Nevo.  The Tel Aviv Economic Department has jurisdiction over both economic and non-economic matters in lawsuits involving significant economic matters.  C.A. (Tel Aviv Economic Department) 1963-05-11 *AVA Financial Ltd. v. Malka*, of 13.09.2011, Published in Nevo.  Pursuant to Section 42B(3) of the Israeli Courts Law, disputes relating to the rights or obligations of shareholders, including those regulated by the company's Articles of Association or contract constitute economic matters.  Furthermore, disputes "concerning the core of corporate law, regarding the relationship between the Company's shareholders and the relations between the company the directors and majority shareholders thereof, [are] relations regulated by the Company's Articles of Association and as such [they are] under the jurisdiction of the Economic Department."  Originating Motion (Tel Aviv Economic Department) 36108-07-15 *Trelov v. Ludmir*, of 19.07.2015, Published in Nevo.  Article 191(a) of the Israeli Companies Law provides Israeli courts with broad flexibility to take a range of actions and grant various types of remedies to afford relief to minority shareholders.  *See, e.g.*, C.A. 8712/13 *Adler v. Livnat*, of 01.09.2015, Published in Nevo.  And, Article 75 of the Courts Law [Integrated Version], 1984 ("Courts Law"), authorizes the courts to grant declaratory remedies, such as the alter ego declaration that Plaintiff seeks in its Complaint.

In sum, Israel is an adequate available forum for the resolution of the disputes raised by Plaintiff's Complaint.

### 2. Israel Is A More Convenient Forum For the Resolution of Plaintiff's Claims Challenging the Companies' Conduct and Alleging Breach of Fiduciary Duty.

Consideration of the private and public factors guiding the court's *forum non convenience* analysis also demonstrates that Israel is a more convenient forum for the resolution of Plaintiff's claims.

*First*, aside from Plaintiff, most of the other parties and witnesses are residents and citizens in Israel. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) (dismissal appropriate where the relevant documents and witnesses were mostly located abroad). The individual Defendants – Eliezer, Niryaev, Jdanov, Hamo and Raskansky – are residents and citizens of Israel. Niryaev Decl. ¶¶ 3, 6. All of the accounting, finance, IT and other employees of Mantu and Beezz with information relevant to Plaintiff's claims are Israeli residents. *Id.* ¶ 3. A majority of these witnesses cannot be compelled to appear and are not subject to jurisdiction in California. Moreover, Mantu's outside auditor is the Israeli subsidiary of KMPG, and the knowledgeable partners and staff are located in the Tel Aviv office. *Id.* ¶ 7.

*Second*, all of the documents relating to the issues in this case are located in Israel, including documents related to: the development and commercialization of Mantu's platform; customer contracts and sales presentations; the companies' financial accounting systems and records and any documents related to the purported commingling of assets and usurpation of business relationships and opportunities. *Id.* ¶ 8. Moreover, many of those documents are in Hebrew and many of the potential witnesses only speak Hebrew. *Id.* ¶¶ 6, 8.

*Third*, the companies are governed by Israeli laws relevant to their formation as well as the fiduciary and other obligations owed by directors and majority shareholders to minority shareholders. *See, e.g.*, Israeli Companies Law, 1999, Articles 192 (shareholder obligations), 193 (controlling shareholders), 252(a) (duty of care of directors and officers), and 254 (duty of loyalty). Israeli courts will be better situated to resolve questions of Israeli laws than the Northern District of California. The need to apply foreign law is a strong public factor in favor of dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981).

*Fourth*, the congestion levels of the Israeli courts and the Northern District of California are essentially the same so that this factor is neutral.

*Fifth*, judgment by an Israeli court would be more expeditiously and directly enforced in Israel. Plaintiff would not have to seek any other extraterritorial remedies to enforce a judgment since all of the individual defendants are Israeli residents and citizens, and the corporate defendants also are Israeli companies. If this Court were to rule in Plaintiff's favor, Plaintiff would have to

10

initiate further proceedings in Israel to enforce the Court's judgment. *See Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 (9th Cir. 2013) (*citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006)) ("In international diversity cases . . . 'enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought'"); *see also Tahan v. Hodgson*, 662 F.2d 862, 868 (D.C. Cir. 1981) (to enforce a U.S. judgment against an Israeli defendant, plaintiff would need to bring suit in a local Israeli court and obtain an Israeli judgment).

For all of these reasons, California is not a convenient forum for resolution of Plaintiff's claims challenging the conduct of Mantu, Beezz and their directors and shareholders and Plaintiff's action is subject to dismissal under the *forum non conveniens* doctrine.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED.

### A. Pleading Standards Under Rules 8(a), 9(b) and 12(b)(6)

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

When a pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). To meet this standard, "[']a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1139 (N.D. Cal. 2013) (citations omitted). When a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," a claim sounds in fraud and is subject to Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)).

### B. Plaintiff's Fraud Claims Fail to Meet Rule 9(b) Pleading Standards.

Plaintiff fails to plead its fraud claims with particularity in several respects. First, while Plaintiff alleges that Defendants made a number of misrepresentations about the readiness of

11

Mantu's technology and the existence of customers prepared to purchase that technology as well as specific customer contacts and sales presentations, the Complaint does not identify which particular Defendants made such statements – stating only that defendants Eliezer, Niryaev, Cayre and Moyal were initially responsible for soliciting its investment.  Compl. ¶ 25.  Nor does Plaintiff identify when or how such statements were made – *i.e.,* were they made in writing, in emails, in oral discussions, over the telephone – merely alleging that such representations were made "starting in the summer of 2015."  *Id.* ¶¶ 17–26.

Second, the Complaint alleges that Defendants falsely represented that Beezz and Mantu were separate companies, without pointing to the content, substance, timing or maker of any particular representation about the companies' corporate status.  *Id.* ¶ 20.  While Plaintiff claims that one of the co-CEOs later admitted that the finances and operations of Mantu and Beezz were hopelessly intermingled, the Complaint does not even name that Defendant or the circumstances surrounding that purported admission.  *Id.* ¶ 40.

Indeed, there are literally no allegations whatsoever about several of the individual Defendants, including defendants Jdanov, Hamo and Raskansky.  While the Complaint alleges that Defendant Moyal was one of the parties initially responsible for soliciting Plaintiff's investment, *Id.* ¶ 25, there are no allegations attributing any specific misrepresentations to Moyal.  With respect to Defendant Cayre, all of the statements specifically attributed to him in the Complaint are asserted to be true – not false.  For instance, the Complaint alleges that Defendant Cayre told Plaintiff that at least $3 million of its investment was sent to Beezz, that "Plaintiff's 'investment' was fraudulently solicited," and that Cayre would "mak[e] things right" – all statements which purportedly are true and are used to support Plaintiff's claim.  *Id.* ¶ 39.

Plaintiff also cannot rely on blanket conspiracy allegations to avoid its obligation to plead fraud with particularity.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud") (internal citations omitted); *see also Trans v. Bank*, 2012 WL 12894838, at *3 (C.D. Cal. Oct. 29,

2012) (dismissing complaint because its "statements are conclusory and do not give notice to Defendants as to the specific misrepresentations, when they were made, or even which entity made them"); *see also Benham v. Aurora Loan Servs.*, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (finding Rule 9(b) pleading insufficient where "Plaintiff's sixth cause of action does not inform [Defendant] of the nature of its alleged participation in the fraud").

Accordingly, Plaintiffs' fraud claims – first through fourth causes of action – do not meet the particularity standard of Rule 9(b) and should be dismissed.

### C.     Plaintiff's Fraud Claims (First, Second, Third and Fourth Causes of Action) Must Be Dismissed Because It Cannot Prove Reliance.

Plaintiff also cannot state fraud claims because it cannot establish reliance – an essential element of all of those claims.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ("[t]he elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage'");  *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (Rule 9(b)'s pleading requirements necessitate that Plaintiff allege reliance on a specific misrepresentation);  *see also Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1012 (N.D. Cal. 2010) (to plead a claim under the fraudulent prong of the UCL, plaintiff must allege reliance).

Plaintiff alleges that it relied on a number of misrepresentations by the Defendants in making its investment in Mantu, including misrepresentations about the development stage of the product and potential customer contracts.  *See, e.g.*, Cmpl. ¶¶ 15–26.  In particular, Plaintiff alleges that he relied upon statements that Mantu had "world class patented technology" of "cutting-edge design" that could be "brought to market quickly and profitably" and that "multiple customers [were] prepared to adopt Mantu's technology once ready for deployment."  *Id.* ¶¶ 17–18.

However, the Share Subscription Agreement contains a non-reliance clause expressly stating that: "Except as set forth herein, Subscriber has not received or relied upon any representations, warranties or assurances of or from the Company or any persons acting on its behalf concerning the investment in the Company."  Niryaev Decl., Exhibit A at ¶ 2.  None of the

purported statements that Plaintiff now asserts were fraudulent and that it purportedly relied on in making its investment are contained in the Share Subscription Agreement.[3]  Plaintiff's purported reliance on these statements is thus inherently unreasonable as a matter of law and Plaintiff cannot premise a fraud claim on these purported representations.

Courts have not hesitated to dismiss fraud claims in similar circumstances where plaintiff signed an agreement with a non-reliance clause.  *See Claxton v. Bowes*, 2013 WL 1290806, at *3 (E.D. Wash. Mar. 26, 2013) (holding that the existence of a non-reliance clause "renders any reliance by Plaintiff unreasonable as a matter of law"); see also *Bank of the W. v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477 (9th Cir. 1994) (holding that, under California law, reliance in fact does not override a non-reliance agreement where "the clear and explicit language of the contract prevented justifiable reliance"); *see also FMC Techs., Inc. v. Edwards*, 302 F. App'x 577, 577–78 (9th Cir. 2008) (affirming summary judgment because "Washington law [like California law] supports the conclusion that the settlement agreement's non-reliance language precluded [Plaintiff's] fraud claims").

Accordingly, Plaintiff's first four claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  Because Plaintiff cannot cure this pleading deficiency, those claims should be dismissed with prejudice.

### D.  Plaintiffs' Fraud Claims (First, Second and Third Causes of Action) Are Time-Barred And Should Be Dismissed.

Plaintiff's fraud claims are all subject to a three year statute of limitations and so are time-barred.  Cal. Civ. Proc. Code § 338 (an action for relief on the ground of fraud or mistake must be brought within three years of discovery, by the aggrieved party, of the facts constituting the fraud or mistake);  *Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (2010) (discovery under § 338 "has been interpreted to mean 'the discovery by the aggrieved party of the

---

[3] Moreover, the purported statements that Plaintiff challenges for the most part are forward-looking statements or mere puffery that Plaintiff cannot reasonably rely on as statements of fact – e.g., Mantu's "world class patented technology" of "cutting edge design" that "could be brought to market quickly and profitably", and that there were multiple customers "prepared to adopt Mantu's technology once ready for deployment." Cmpl. ¶¶ 17–18; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (puffing, i.e. "vague statements of optimism" and "mildy optimistic, subjective assessment[s]" can "hardly amount[] to a securities violation" given that "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives").

fraud or facts that would lead a reasonably prudent person to suspect fraud'") (citing *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983) (emphasis in original omitted).  While Plaintiff pleads that it only discovered the fraud in 2019, the Complaint's allegations demonstrate that Plaintiff was aware of the purportedly misrepresented facts almost immediately.

Plaintiff claims that it invested in Mantu in December 2015 based on Defendants' alleged misrepresentations that it had technology ready to commercialize and prospective customers ready to purchase.  Compl. ¶¶ 17–19.  Yet, Plaintiff admits that it was immediately clear that the product was not ready to deploy.  As a result, Plaintiff implicitly acknowledges that it knew of the purported misrepresentations no later than January 2016.  Indeed, the Complaint alleges that Plaintiff repeatedly sought updates about Mantu's "road to commercialization" all the way up until 2018 because the product was still not ready to deploy and the purported customer relationships touted in 2015 never materialized.  *Id.* ¶¶ 33–35.  Accordingly, Plaintiff knew almost immediately after the investment was made in December 2015 that the product was not ready to go to market and had not been sold to any customer.  Thus, Plaintiff should have brought its fraud claims no later than January 2019 and its failure to do so means those claims are barred by the statute of limitations.

Plaintiff also cannot avoid the statute of limitations by arguing fraudulent concealment.  In order to toll the statute of limitations or invoke the discovery rule, the plaintiff must show that it could not with due diligence have discovered the true facts.  *See N.L.R.B. v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 (9th Cir. 1979) (holding that a statute of limitations is not tolled where claimant "actually knew, or by the exercise of due diligence should have known about the alleged [violation]"; *see also Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 764 (D.C. Cir. 1965) ("On[e] well established defense to a claim of fraudulent concealment is that the plaintiff knew, or by the exercise of due diligence could have known, that he may have had a cause of action").  Here, the Complaint contradicts any assertion that Plaintiff acted with due diligence to uncover the facts.  Plaintiff claims that it repeatedly asked for updates about when the technology would be ready, thereby acknowledging its awareness that Defendants apparently had not been accurate in suggesting that it was about to deploy in 2015 at the time of the share purchase.  Compl. ¶ 33.  Yet, Plaintiff took no further action beyond these unsuccessful queries; it made no effort to

exercise its rights as a shareholder, for example, to review books and records.  Moreover, Plaintiff alleges that it discovered the truth only when Defendants purportedly "confessed" and voluntarily disclosed that the customer relationships had never materialized.  *Id.* ¶¶ 38–39.  The Complaint's own allegations thus undermine any argument that Plaintiff acted with due diligence and could not have uncovered the true facts earlier.

In short, it is apparent on the face of the Complaint that Plaintiff's claims are time-barred and should be dismissed.

### E.     Plaintiff's Fourth Cause of Action for Violation of Cal. Bus. & Prof. Code Section 17200 Should Be Dismissed Because Plaintiff Cannot Assert Claims Under California Law.

Plaintiff's fourth cause of action – alleging that Defendants engaged in unlawful business practices in violation of Section 17200 by making fraudulent representations to induce its investment – must be dismissed because that claim relates to the Share Subscription Agreement and Plaintiff cannot state claims relating to that Agreement under California law.  Plaintiff expressly agreed to the choice of law provisions in the Share Subscription Agreement which mandate that New York law governs the Agreement and any potential claims related to it.  Niryaev Decl., Exhibit A.  Therefore, Plaintiff cannot state a claim alleging that its investment and agreement to the share purchase were the product of unlawful business practices in violation of California's Business and Professions Code.  The fourth cause of action therefore should be dismissed on this additional ground.

### F.     Plaintiff Fails to State A Claim for Breach of Fiduciary Duty.

Plaintiff's fifth cause of action alleges that Defendants breached fiduciary duties that all Defendants owed to Plaintiff.  Plaintiff asserts that he is a "minority shareholder" of Mantu and that all of the other individuals are "controlling majority shareholders" that owe him a fiduciary duty.  Cmpl. ¶ 76.  However, there are no allegations establishing that Defendant Moyal held a majority of shares and Defendant Cayre is only alleged to hold 40% of the shares which by definition means that Cayre is not a majority shareholder and therefore does not owe any special duty of loyalty or care to Plaintiff.  *Id.* ¶ 7.  To the extent that the Complaint alleges Defendant Cayre owed fiduciary duties as a director of Mantu, those duties are owed to the corporation and not to individual

16

shareholders.  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005) ("a shareholder cannot bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)");  *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 224 (S.D.N.Y. 2005) ("[a] corporate officer or director generally owes a fiduciary duty only to the corporation over which he exercises management authority, and any breach of fiduciary duty claims arising out of injuries to the corporation in most cases may only be brought by the corporation itself or derivatively on its behalf").

Moreover, Plaintiff also fails to allege facts establishing a breach of fiduciary duty by either Defendant Cayre or Moyal.  The Complaint alleges that Defendants collectively breached fiduciary duties owed to HSM by: failing "to provide value for the payments they received"; raiding the company's funds and stealing its corporate opportunities to benefit Beezz; failing to protect HSM; and internally misrepresenting and omitting material facts.  Cmpl. ¶ 77. However, there are no facts alleged in the Complaint to support these purported breaches as to either Defendant Moyal or Cayre:  the Complaint does not allege that Cayre or Moyal received funds from Mantu; neither Cayre nor Moyal diverted opportunities to Beezz; and as described above, there are no allegations of specific misrepresentations by Cayre or Moyal.  Accordingly, Plaintiff fails to state a breach of fiduciary duty claim as to Defendants Cayre and Moyal.

### G.    Plaintiffs' Civil Code Section 3439 Voidable Transfer Claim Must Be Dismissed.

Plaintiff's voidable transfer claim under Cal. Civ. Code Section 3439 must be dismissed because Plaintiff cannot assert claims under California law and because Plaintiff is not a creditor of Mantu.

First, to the extent that Plaintiff's voidable transfer claim relates to or arises from the Share Subscription Agreement, that claim is subject to the choice of law provisions in the Agreement which mandate New York law.  Plaintiff's Share Subscription Agreement states that New York law governs any claims "relating to" the share purchase, thus Plaintiff cannot state claims relating to the share purchase under California's Civil Code provisions.

Second, and more importantly, Plaintiff is not a creditor of Mantu and thus does not have standing to assert this claim.  The voidable transfer statute defines a creditor who can challenge a

17

voidable transfer as a person or entity with a "right to payment."  Cal. Civ. Code § 3439.01(c).

Plaintiff does not allege and cannot establish that it has a "right to payment."  Shareholders are

owners – not creditors – of the corporation; shareholders purchase stock – an ownership interest in

the corporation – and do not hold a debt of the corporation.  *Bauer v. Comm'r*, 748 F.2d 1365, 1367

(9th Cir. 1984) ("[t]he determination of . . . debt or equity depends on the distinction between a

creditor who seeks a definite obligation that is payable in any event, and a shareholder who seeks to

make an investment and to share in the profits and risks of loss in the venture"); *see In re U. S. Fin.*

*Inc.*, 648 F.2d 515, 520 (9th Cir. 1980) ("[s]hareholders bargain for equity-type rewards in

exchange for equity-type risks, but general creditors do not").  Here, Plaintiff made a $4 million

investment in Mantu and received exactly what it bargained for in exchange: 4,144 shares.  Plaintiff

did not loan that $4 million to Mantu or otherwise extend Mantu credit.

While Plaintiff seeks damages in this action, a claim for damages in a lawsuit does not

amount to a "right to payment" and render Plaintiff a creditor.  Indeed, if that were the case, then

every litigant would have standing to challenge transfers made by an opposing party and assert

claims under Section 3439.  Relatedly, transfers are voidable only where the transfer was made as

to a creditor "whose claim arose before the transfer was made."  Cal. Civ. Code § 3439.05.  Here,

Plaintiff cannot establish that it had a claim or right to payment before the purported transfer of

funds between Mantu and Beezz which Plaintiff alleges occurred immediately after its share

purchase.  Cmpl. ¶ 38.  Indeed, that alleged transfer is precisely one of the purportedly wrongful

acts that are alleged to give rise to Plaintiff's claims for damages in this case and the transfer thus

obviously took place before Plaintiff's purported claim arose.  Thus, Plaintiff cannot state a claim

for voidable transfer.

### H.   Restitution Is Not a Standalone Claim and Plaintiff's Eighth Claim should be Dismissed.

Plaintiff's eighth cause of action for restitution should be dismissed because restitution is an

equitable remedy, not a standalone claim for relief, under California law.  *Fraley v. Facebook, Inc.*,

830 F. Supp. 2d 785, 814 (N.D. Cal. 2011).

## V. THE CLAIMS AGAINST DEFENDANT CAYRE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

This Court also should dismiss the Complaint as to Defendants Cayre and Moyal pursuant to Federal Rule of Civil Procedure 12(b)(2) because the Court cannot exercise personal jurisdiction over Cayre and Moyal.  Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *See Hylwa, M.D., Inc. v. Palka*, 823 F.2d 310, 312 (9th Cir. 1987).  This case was brought in the Northern District of California; California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir.1977). Thus, we "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir.1989).

"The exercise of jurisdiction over a nonresident defendant comports with the[] [state and federal] Constitutions if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate traditional notions of fair play and substantial justice."  *Snowney v. Harrah's Entm't, Inc.*, 35 Cal. 4th 1054, 1061 (2005) (citations, quotations omitted). "Under the minimum contacts test, personal jurisdiction may be either general or specific." *Id.* at 1062 (internal quotations, citations omitted).  Here, Defendants Cayre and Moyal are  subject to neither general nor specific jurisdiction with respect to Plaintiff's claims and the claims should therefore be dismissed.[4] Although the defendant is the moving party on a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists. *See KVOS, Inc. v. Assoc. Press*, 299 U.S. 269, 278 (1936).

### A. The Court Cannot Exercise General Jurisdiction Over Defendants Cayre and Moyal.

This Court does not have general jurisdiction over Defendants with respect to Plaintiffs' claims.  General personal jurisdiction extends to claims "unrelated to" the defendant's contacts with the forum state, in only very limited circumstances.  A court has general jurisdiction where the defendant's contacts with the forum state are "so continuous and systematic" that the defendant is

---

[4] If the Court grants Defendants' motion to transfer pursuant to Section 1404 or dismisses on *forum non conveniens* grounds than the personal jurisdiction issue is moot and the Court need not rule on this argument.

"essentially at home in [that] state." *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 918-20 (2011).

As described in the attached Declarations, Moyal has had almost no contact with the state of California, and Cayre has had very limited and infrequent contacts with California that do not in any sense rise to the level that would subject him to general jurisdiction.  Neither Carey nor Moyal regularly transact business in California.  Their visits to California have been limited to leisure and vacation trips.  In such circumstances, courts have refused to exercise general jurisdiction over individuals.

### B. The Court Cannot Exercise Specific Jurisdiction Over Defendants Cayre and Moyal.

This Court also cannot exercise specific jurisdiction over Cayre and Moyal.  A court has specific jurisdiction over a non-resident defendant only where there is a sufficient connection between the defendant, the forum, and the cause of action.  *Kalmanovitz v. Standen*, 2015 WL 12939339, at *2 (W.D. Wash. Dec. 9, 2015) (citing *Helicopteros Nacionales de Colom., SA v. Hall*, 466 U.S. 408, 413-14 (1984)).  In evaluating specific jurisdiction, the Ninth Circuit applies a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Id.*, at *2 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  Plaintiff cannot satisfy this three-prong test with respect to Cayre and Moyal.

### 1. Cayre and Moyal Have Not Purposefully Availed Themselves of the Benefits of the Forum or Directed Their Activities Toward California.

The purposeful availment prong is satisfied where "defendant either purposefully availed [himself] of the privilege of conducting activities in the forum, or purposefully directed [his]

activities at the forum." *Kalmanovitz,* 2015 WL 12939339, at *2 (quoting *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012).  Here, neither Cayre nor Moyal purposefully availed himself of the privilege of conducting activities with this forum or directed his activities at California.  As described in his Declaration, Cayre's meetings with HSM and its representatives about Mantu occurred in Cayre's New York office.  And, Moyal had no meetings related to Mantu or HSM in California.

### 2.      This Action Does Not Arise From Defendants' Forum-Related Activities

The second prong requires that the claim "arise out of" the defendant's forum-related activities.  This requirement is satisfied if plaintiff would not have been injured "but for" defendant's conduct in the forum.  *Panavision Int'l LLP v. Toepper*, 141 F.3d 1316, 1322 (9th Cir. 1998).  Here, the conversations that Cayre had with HSM about investing in Mantu occurred in New York.  Likewise, the Complaint does not allege that Moyal engaged in any forum related activity in connection with HSM's investment in Mantu.

### 3.      This Court's Exercise of Personal Jurisdiction Would Be Unreasonable

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (citations omitted).   While Plaintiff cannot establish that either Cayre or Moyal had sufficient minimum contacts with California, even if they had relevant forum related contacts, this Court's exercise of jurisdiction still would be unreasonable.  In evaluating whether the exercise of jurisdiction is reasonable, courts consider:  (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; (7) the existence of an alternative forum.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F. 3d 1482, 1485 (9th Cir. 1993).  These factors weigh against this Court's exercise of personal jurisdiction over

1   Defendants Cayre and Moyal.

2       First, Cayre and Moyal have not purposefully interjected themselves into California.  Neither

3   Cayre nor Moyal traveled  to California in connection with this matter, rather Cayre met with HSM

4   in New York to discuss its potential investment.

5       Second, defending the claims in California would be burdensome for Cayre and Moyal.  The

6   Complaint alleges that Defendants both personally made misrepresentations to HSM and they

7   presumably will be essential witnesses at trial, but Cayre and Moyal both have active professional

8   careers based in New York so that appearing at trial in California would be burdensome.

9       Third, California does not have an interest in adjudicating this dispute because the parties

10  already have agreed that any disputes relating to the Share Subscription Agreement are governed by

11  New York law and should be resolved in New York courts.

12      Fourth, California does not provide an efficient forum for resolution of this dispute.  As

13  discussed above, either New York or Israel provide  alternative and more convenient fora.  The

14  Share Subscription Agreement is governed by New York law and that Agreement explicitly

15  designates New York in the forum selection clause.  New York would be a more convenient forum

16  since Defendants Cayre and Moyal are residents of New York.  Alternatively, Israel also would be a

17  more convenient and efficient forum since the companies are located in Israel, most of the witnesses

18  and documents are located in Israel, and Israeli law applies to most of the legal issues raised by the

19  claims asserted in the Complaint.  In determining the most efficient judicial resolution of the

20  controversy, courts primarily look at where the witnesses and the evidence are likely to be located.

21  *Menken v. Emm*, 503 F.3d 1050, 1060–61 (9th Cir. 2007).

22      In sum, even if Cayre or Moyal had sufficient minimum contacts with California – which

23  they do not – these factors demonstrate that this Court's assertion of jurisdiction over these

24  Defendants would be unreasonable and would not comport with notions of fair play.  The Court

25  thus should grant Defendants' motion to dismiss on personal jurisdiction grounds pursuant to Rule

26  12(b)(2).

27  **VI.      CONCLUSION.**

28      For the foregoing reasons, this Court should dismiss Plaintiff's action pursuant to Fed. R.

1   Civ. Proc. 12(b)(3) because it was filed in an inconvenient forum or, in the alternative, should

2   transfer the action pursuant to Rule 1404(a).  Plaintiff's claims also should be dismissed for failure

3   to state a claim pursuant to Fed. Rules Civ. Proc. 8 and 12(b)(6) and for lack of personal

4   jurisdiction pursuant to Rule 12(b)(2).

5

6   DATED: August 14, 2019                                  Respectfully submitted,
                                                            SIDLEY AUSTIN LLP
7
                                                            By: /s/ Carol Lynn Thompson
8                                                           Carol Lynn Thompson (SBN 148079)
                                                            cthompson@sidley.com
9                                                           Wesley Chao (SBN 324077)
                                                            wchao@sidley.com
10                                                          SIDLEY AUSTIN LLP
                                                            555 California Street
11                                                          Suite 2000
                                                            San Francisco, CA 94104
12                                                          Telephone: (415) 772-1291

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 8, 9(b), 12(b)(2), 12(b)(3) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES