UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
:
HSM HOLDINGS, LLC                                                    :
                                                                    :
Plaintiff,                                                          :
                                                                    :
                                                                    :          20-cv-00967 (LJL)
v.                                                                  :
                                                                    :          OPINION AND ORDER
                                                                    :
MANTU I.M. MOBILE LTD., BEEZZ                                       :
COMMUNICATIONS SOLUTIONS LTD., ERAN BEN    :
ELIEZER, JOSEPH CAYRE, GAVRIEL GEORGE                    :
NIRYAEV, DENIS JDANOV, ERAN HAMO,                          :
MICHAEL RASKANSKY, and BRAMS JACOB               :
MOYAL,                                                              :
                                                                    :
Defendants.                                                        :
                                                                    X
---------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

Plaintiff HSM Holdings, LLC ("HSM" or "Plaintiff") brings this action against

Defendants Mantu I.M. Mobile Ltd. ("Mantu"), Beezz Communication Solutions, Ltd.

("Beezz"), Eran Ben Eliezer ("Eliezer"), Joseph Cayre ("Cayre"), Gavriel George Niryaev

("Niryaev"), Denis Jdanov ("Jdanov"), Eran Hamo ("Hamo"), Michael Raskansky

("Raskansky"), and Brams Jacob Moyal ("Moyal") (collectively, "Defendants").  HSM asserts

claims sounding in tort and breach of contract in connection with a 2015 investment by HSM in

Mantu.

Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(2), for failure to

allege personal jurisdiction, and under Fed. R. Civ. P. 9(b) and 12(b)(6), for failure to plead fraud

with particularity and failure to state a claim for relief.  For the following reasons, the

Defendants' motion is granted.

## BACKGROUND

HSM is a Delaware limited liability company with its principal place of business in Alameda County, California.  Dkt. No. 68, ¶ 17.  Mantu is an Israeli limited company with its principal place of business in Israel.  *Id.* ¶ 18.  It is a technology start-up company that, at the relevant time, was developing an encryption technology.  *Id.* ¶ 4.  Beezz is an Israeli company with its principal place of business in Israel.  *Id.* ¶ 19.  It is alleged to be an alter ego of Mantu. *Id.* ¶¶ 19, 44-46.

The individual defendants are officers, directors and/or shareholders of Mantu and, on information and belief, of Beezz.  *Id.* ¶ 44.  Eliezer is the co-CEO, founder, director, and major shareholder of Mantu and, on information and belief, also a director of Beezz.  *Id.* ¶ 21.  Niryaev is the co-CEO, founder, chairman of the board, and major shareholder of Mantu and, on information and belief, a director of Beezz.  *Id.* ¶ 22.  Jdanov, Hamo, and Raskansky are founders and major shareholders of Mantu and, on information and belief, of Beezz.  *Id.* ¶¶ 23-25.  Eliezer, Niryaev, Jdanov, Hamo, and Raskansky are all Israeli citizens who reside in Israel. *Id.* ¶¶ 21-25.  Cayre, on information and belief, is a large shareholder of both Mantu and Beezz. *Id.* ¶ 20.  He is also a director of Mantu and, on information and belief, of Beezz.  *Id.*  Moyal is a shareholder of Mantu and, on information and belief, of Beezz.  *Id.* ¶ 26.  Cayre and Moyal are both U.S. citizens who reside in New York.  *Id.* ¶¶ 20, 26.

The complaint alleges a scheme perpetrated by the Defendants to defraud HSM of at least $3 million in connection with its investment in Mantu.  *Id.* ¶ 1.  The scheme allegedly began in 2015.  *Id.* ¶ 2.  Cayre, the patriarch of a family real estate business, reached out to HSM in California to invite HSM to join him in investing in Mantu, which he described as a promising technology venture.  *Id.* ¶¶ 2-3.  Cayre described Mantu's technology, a high-security, military-

2

grade encrypted communicated platform, as a "game changer" that possessed "many many other features not available" from Mantu's competitors. *Id.* ¶ 4. With this technology, Cayre claimed, Mantu would be able to target major government and institutional buyers. *Id.* Cayre told HSM that both he and Moyal had already invested in Mantu, and that Cayre was responsible for mentoring the Mantu co-CEOs Eliezer and Niryaev. *Id.* ¶ 3.

Cayre thereafter introduced HSM to the Mantu leadership team, including Eliezer and Niryaev, at a meeting in California. *Id.* ¶ 5. Cayre, Eliezer, and Niryaev represented to HSM that Mantu had attracted the interest of international customers, including the government of Kazakhstan. *Id.*

In December 2015, HSM invested $4 million in Mantu in exchange for 4,414 shares (8 percent ownership) of Mantu. *Id.* ¶¶ 37, 45. Mantu's counsel prepared a share subscription agreement, Dkt. No. 71-1, Ex. A ("the Agreement"), which contained the following forum selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The parties agree that any action brought by either party under or in relation to this Agreement including, without limitation, to interpret or enforce any provision of this Agreement, shall be brought in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in the borough of Manhattan, New York City.[1]

---

[1] In considering a Rule 12(b)(6) motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (internal citations and quotations omitted); *see also San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos*., 75 F.3d 801, 808-09 (2d Cir. 1996) (concluding that documents "integral" to the complaint were properly considered on a motion to dismiss). Should a district court rely on a document integral to the complaint, it must ensure there is no dispute regarding the authenticity, accuracy, or relevance of the document. *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006). The Plaintiff relies extensively on the Share Subscription Agreement in its Complaint, quoting from it and making representations as to its

*Id.* 3; *see also* Dkt. No. 68, ¶ 30, 37.  The Agreement includes an acknowledgment that HSM "has sufficient knowledge and experience in financial matters so as to be capable of evaluating the merits and risks of purchasing the Shares."  Dkt. No. 71-1 ¶ 1.  It also includes an integration clause, pursuant to which HSM agrees that, except as set forth in the Agreement, it had "not received or relied upon any representations, warranties or assurances of or from the Company or any persons acting on its behalf concerning the investment in the Company."  *Id.* ¶ 2.  The Agreement was signed by Sam Hirbod for HSM and Eliezer and Niryaev in their capacities as Mantu co-CEOs.  *Id.* 5, 6; *see also* Dkt. No. 68, ¶ 39.  Cayre managed the logistics of wiring the $4 million payment.  Dkt. No. 68, ¶ 7.  HSM also signed a services agreement whereby it would earn a 20% cash commission on all Mantu sales to any customer identified by HSM up to the full amount of its $4 million investment.  *Id.* ¶ 40.

Defendants later solicited HSM's investment in Beezz, which they pitched as a promising start-up focused on bringing a different technology to a different business segment with a different business plan.  *Id.* ¶ 38.  Defendants told HSM that the two were separate and distinct companies.  *Id.*  HSM did not invest in Beezz.  *Id.* ¶ 39.

In early 2019, however, Cayre told HSM that "at least" $3 million of the funds that HSM had invested in Mantu had been used by Beezz.  *Id.* ¶ 59.  Around the same time, Eliezer told HSM that "no more than" $600,000 of the HSM's $4 million investment in Mantu had been used by Mantu.  *Id.* ¶ 60.  Eliezer also allegedly referred to Mantu as a "Ponzi" scheme.  *Id.* ¶ 61.  He

---

contents.  *See* Dkt. No. 68, ¶¶ 6, 30, 37, 39, 143-45, 152-54.  The nature of the Share Subscription Agreement and the transaction that it facilitated is the central issue of the case. Defendants furnished a copy of the Agreement in connection with its motion.  *See* Dkt. No 71-1, Ex. A.  The Plaintiff has not disputed the accuracy, authenticity, or relevance of the document. In making its determination on this 12(b)(6) motion, the Court will consider the Share Subscription Agreement as integral to the Plaintiff's Complaint and incorporated by reference.

told HSM that from the beginning, Mantu had not been the legitimate business venture described by Defendants, but was instead a sham used to take Plaintiff's investment and divert it to fund Beezz. *Id.* Cayre told HSM that HSM's investment had been used to finance Beezz because Beezz could not have secured financing on its own. *Id.* ¶ 62. On June 18, 2019, HSM sent an email to Cayre, Eliezer, Niryaev, and Moyal requesting that its investment be returned immediately. *Id.* ¶ 53. Eliezer then sent HSM two emails detailing projects that he claimed were in their "final stage" or scheduled to launch in the near future. *Id.* ¶¶ 55, 56.

HSM claims that the individual defendants leveraged their dual ownership in order to transfer HSM's investment from Mantu to Beezz. *Id.* ¶ 45. HSM contends that Mantu was established as a sham entity in order to facilitate this unagreed-upon transfer, which enriched Beezz and the individual defendants and deprived HSM of the benefits of its investment. *Id.* ¶¶ 54, 57.

HSM brings the following claims against Defendants: (1) conversion under California law; (2) fraud and deceit in violation of California law; (3) fraudulent concealment in violation of California law; (4) fraudulent inducement in violation of New York law; (5) fraudulent concealment in violation of New York law; (6) negligent misrepresentation in violation of California law; (7) negligent misrepresentation in violation of New York law; (8) unlawful business practices in violation of California law; (9) deceptive practices in violation of New York law; (10) breach of contract under California law; (11) breach of contract under New York law; (12) breach of fiduciary duty under California law; and (13) breach of fiduciary duty under New York law. Plaintiff also requests (14) declaratory judgment of alter ego status pursuant to California law; and (15) declaratory judgment of alter ego status pursuant to New York law. It further alleges (16) money had and received under California law; (17) remedy in quasi-contract

under New York law; and (18) voidable transfer under California law.  Finally, it seeks (19) restitution for unjust enrichment.

HSM seeks repayment of $4 million with interest under California law or, at its option, a percentage ownership of Beezz similar to what it had purchased of Mantu.

## PROCEDURAL HISTORY

Plaintiff first filed this action in the Superior Court of California County of Alameda. The action was removed to the U.S. District Court for the Northern District of California pursuant to 28 U.S.C §§ 1332, 1441, and 1446 in July 2019.  Dkt. No. 1.  Defendants Cayre and Moyal filed a motion to dismiss seeking transfer to the District of New York pursuant to 28 U.S.C. § 1404.  Dkt. No. 12.  The other Defendants had not yet been properly served and accordingly did not join in Cayre and Moyal's motion.  Cayre and Moyal's § 1404 argument was premised on the forum selection clause in the Agreement, which they argued was mandatory and required that the case be transferred to New York.  *Id.*  The U.S. District Court for the Northern District of California granted the motion and transferred the case to this Court on February 5, 2020.  Dkt. No. 40.

On May 8, 2020 Plaintiff filed its First Amended Complaint ("the Complaint") in this Court.  Dkt. No. 68.  On June 2, 2020, the Defendants—each of whom had been served—moved to dismiss the First Amended Complaint.  Dkt. No. 69.  Defendants move to dismiss on the basis of (1) lack of personal jurisdiction over the Israeli citizens and residents: Beezz, Eliezer, Niryaev, Jdanov, Hamo, and Raskansky, (2) *forum non conveniens*, and (3) failure to state a claim pursuant to Rules 8, 9(b), and 12(b)(6).  Dkt. Nos. 69, 70.

Plaintiff filed its opposition to the motion to dismiss on July 8, 2020.  Dkt. No. 77.

Defendants filed a reply brief on July 29, 2020.  Dkt. No. 80.  On February 18, 2021 the parties

convened for oral argument before this Court.

## LEGAL STANDARD

### A.  Jurisdiction

"A court facing challenges as to both its jurisdiction over a party and the sufficiency of

any claims raised must first address the jurisdictional question" and must dismiss the action

against any defendant over whom it lacks personal jurisdiction.  *Lugones v. Pete & Gerry's

Organic*, LLC, 2020 WL 871521, at \*2 (S.D.N.Y. Feb. 21, 2020) (citing *Arrowsmith v. United

Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963)); *see* Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co. v.

Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  "[T]he showing a plaintiff must make

to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending

on the procedural posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722

F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194,

197 (2d Cir. 1990)).  At a pleading stage, a plaintiff need make only a prima facie showing by its

pleadings and affidavits that jurisdiction exists, and such a showing may be established solely by

allegations.  *Id.* at 84-85.

This prima facie showing "must include an averment of facts that, if credited by the

ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *Id.* at 85.  While

the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs," *id.*,

the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept

as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013).  When a plaintiff fails to make the requisite showing of jurisdiction over a defendant, the appropriate remedy is dismissal of all claims against that defendant.  *TAGC Mgt., LLC v. Lehman*, 2011 WL 3796350, at *3 (S.D.N.Y. Aug. 24, 2011).

### B. *Forum Non Conveniens*

A federal court has discretion to dismiss a case on the grounds of *forum non conveniens* when the chosen forum is oppressive or disproportionately inconvenient to the defendant, so long as there is an adequate alternative forum.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).  A decision to dismiss a case under the doctrine of *forum non conveniens* "lies wholly within the broad discretion of the district court."  *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).  "[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens.*"  *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013).

In making its determination, a court typically evaluates "both the convenience of the parties and various public-interest considerations."  *Id.* at 62.  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'"  *Id.* (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  Forum selection clauses comprise an "indispensable element in international trade, commerce, and contracting" by reducing uncertainties about where a suit may be brought.  *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 19 (1972).  Federal courts should "give effect to the legitimate expectations of the parties, manifested in their freely negotiated

agreement, by specifically enforcing the forum clause," *id.* 12, "in all but the most exceptional cases." *Atl. Marine,* 571 U.S. at 62.

### C.  Sufficiency of the Pleadings

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  While facts alleged in the complaint shall be viewed in the light most favorable to the plaintiff, courts need not accept as true plaintiff's legal conclusions. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572 (2007).  Merely providing "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not entitle a plaintiff to relief. *Id.* at 555.  Rather, "the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action." *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).  When a plaintiff fails to state a claim upon which relief may be granted, Rule 12(b)(6) enables a court to dismiss the complaint.  Fed. R. Civ. P. 12(b)(6).

When pleading alleges fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).  In order to comply with Rule 9(b), "the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).  In bringing claims of fraud against multiple defendants, "the plaintiff must inform each defendant of the nature of his alleged participation in the fraud," rather than conflating defendants in vague collective

allegations. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

## I.   DISCUSSION

### A.  Jurisdiction & Venue

Plaintiff alleges jurisdiction is proper against Cayre and Moyal because they reside in New York, took overt actions to harm HSM while in the state, and have sufficient contacts with New York.  Plaintiff further alleges that jurisdiction is proper in New York against Mantu because Mantu has expressly agreed to and could foresee personal jurisdiction through the forum selection clause in the Agreement.  As explained below, these allegations are sufficient to establish that Mantu, Cayre, and Moyal are within the personal jurisdiction of the Court, which Defendants do not contest.

Plaintiff further alleges that New York jurisdiction is proper over Eliezer, Niryaev, Hamo, Jdanov, and Raskansky on the basis of the forum selection clause in the Agreement and their close relationship to Mantu.  Eliezer and Niryaev signed the Agreement and, Plaintiff argues, thus assented to the forum selection clause therein.  Although Hamo, Jdanov, and Raskansky did not sign the Agreement, Plaintiff argues these defendants had a close relationship to Mantu, a signatory of the clause, which would permit the Court to exercise jurisdiction over them.  Plaintiff additionally claims that personal jurisdiction is established on the basis of emails Eliezer sent to Cayre, which Cayre forwarded to Plaintiff from his New York office.  Finally, Plaintiff alleges that jurisdiction is proper against Beezz and the individual defendants on the grounds that they are alter egos of Mantu.

Defendants move to dismiss the claims against Beezz, Eliezer, Niryaev, Jdanov, Hamo, and Raskansky.  They argue that neither the signatories nor non-signatories to the Agreement are

10

within the personal jurisdiction of the Court based upon the forum selection clause therein.  They further claim that Eliezer, Niryaev, Hamo, Jdanov, Raskansky, and Beezz have not engaged in any acts related to the asserted claims that would subject them to New York's long-arm statute.  New York Civil Practice Law and Rules ("C.P.L.R.") § 302.  In considering these arguments, the Court relies on the Complaint and the documents deemed integral to or incorporated by reference into the Complaint.  Plaintiff did not request jurisdictional discovery.

To determine whether the exercise of personal jurisdiction is proper in a diversity case, the Court must conduct a two-part inquiry: first, the Court looks at whether there is a basis for personal jurisdiction under the laws of the forum state, and second, the Court must examine whether the exercise of personal jurisdiction comports with constitutional due process.  *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

Parties may consent to personal jurisdiction by executing an enforceable forum-selection clause.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.").  "Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process" as to the parties bound by that agreement.  *Export–Import Bank of U.S. v. Hi–Films S.A. de C.V.*, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010); *see Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F.Supp.2d 328, 333 (S.D.N.Y.2005) ("A valid forum selection clause establishes sufficient contacts with New York for purposes of jurisdiction and venue.").  Rather, assenting to

"[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997).

### 1. Cayre and Moyal

As residents of New York, Cayre and Moyal are subject to general personal jurisdiction under C.P.L.R. § 301.  Defendants do not contest this Court's jurisdiction over Cayre or Moyal.

### 2. Mantu

As Mantu consented to this Court's jurisdiction through an enforceable forum selection clause, the Court possesses jurisdiction over Mantu.  Defendants do not contest this Court's jurisdiction over Mantu, but they do raise several concerns as to the general suitability of this forum.  As the forum selection clause constitutes the basis for the exercise of personal jurisdiction over Mantu, the Court addresses the validity and scope of the clause here.

As an initial matter, the forum selection clause is enforceable against Mantu under the applicable four-part burden-shifting framework endorsed by the Second Circuit.  *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  To be enforceable, a forum selection clause must (1) be reasonably communicated, (2) be mandatory, and (3) cover the claims and parties involved in the suit.  *Id.*  If each of these elements is met, then a presumption arises that the clause is enforceable, which the moving party can rebut by establishing that (4) enforcement of the clause would be unreasonable or unjust.  *Id.* (citing *Bremen*, 407 U.S. at 15).  If the parties' agreement also contains a choice of law provision, as is the case here, the chosen law governs the analysis for parts two and three of the inquiry as substantive questions of contract law.  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-18 (2d Cir. 2014).  The clause here satisfies all four parts of the Second Circuit test.

First, the clause was reasonably communicated through clear and unambiguous language and visible placement. *See Ujvari v. 1stdibs.com, Inc.*, 2017 WL 4082309, at *8 (S.D.N.Y. Sept. 13, 2017) ("A forum selection clause may be deemed reasonably communicated where the clause at issue appears as a standard section in the main body of an agreement signed by [the parties] and is phrased in both clear and unambiguous language.") (citations and alterations omitted)). The Second Circuit has held that a forum selection clause is reasonably communicated even when in "fine print," and the instant clause well exceeds this standard. *See Effron v. Sun Line Cruises*, 67 F.3d 7, 9 (2d Cir. 1995). The clause was not buried in a lengthy contract; rather, it was set off in its own paragraph in the second page of a document that contained only two pages of terms of agreement, and was printed in text at least as large as the rest of the document. *See, e.g., Bense v. Interstate Battery Sys., Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (holding enforcement of forum selection clause reasonable where "the contract consist[ed] of two easily readable pages; [and] the forum-selection clause in the contract [was] not in fine print or hidden in a mass of unrelated verbiage"); *Gen. Elec. Capital Corp. v. Mehta*, 2002 WL 511553, at *2 (S.D.N.Y. Apr. 4, 2002) (holding forum selection clause enforceable where the contract was "only two pages in length, and the forum selection clause [was] clear and set off in a separate [titled] paragraph").

Second, the forum selection clause is mandatory, that is "parties are *required* to bring any dispute to the designated forum," not "simply *permitted* to do so." *Phillips,* 494 F.3d at 383. "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Id.* at 386. The clause states that the "parties agree that any action . . . *shall be brought* in, and each party agrees to and does hereby submit to the jurisdiction and venue of, any state or federal court located in the borough

13

of Manhattan, New York City."  Dkt. No. 71-1, 3 (emphasis added).  Under New York state law, the phrase "shall be brought" indicates that the venue is mandatory.  *Spirits of St. Louis Basketball Club, Ltd. P'ship v. Denver Nuggets, Inc.*, 922 N.Y.S.2d 349, 351-52 (1st Dep't 2011).

Third, "the claims and parties involved in the suit are subject to the forum selection clause."  *Phillips,* 494 F.3d at 383.  Defendants do not contest the applicability of the forum selection clause to Plaintiff's claims, which all relate to the Agreement and the associated transaction.  Nor do the Defendants claim that Mantu is not subject to the forum selection clause.

The Court thus concludes that "the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute" and "is presumptively enforceable."  *Martinez*, 740 F.3d at 217.  In the face of the presumption, Mantu has not established that enforcement of the clause would be unreasonable or unjust.  A court may determine that enforcement of a clause is unreasonable or unjust, and rebut the presumption of enforceability, if:

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy forum in which the suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Id.* at 228.  Mantu fails to show the presence of any of these factors.  It does not raise concerns as to fraud or overreaching, or any fundamental fairness of this forum's laws.  Rather, it raises difficulties surrounding Hebrew-speaking witnesses located in Israel and Hebrew-language documents.  But it is familiar that this Court, in addressing transnational disputes, will encounter foreign language documents, foreign law, and persons who do not speak English.  That cannot alone provide relief from a forum selection clause.  One of the parties to the forum selection

clause is a United States citizen.  The other would have understood at the time the parties agreed

to the forum that some number of its documents would be in Hebrew and its witnesses would

speak Hebrew.  Mantu does not allege that its defense relies on nuances that would be impossible

to properly translate, nor does it suggest that Hebrew is so uncommon that a translator could not

be procured.  *See, e.g, Manela v. Garantia Banking Ltd.*, 940 F. Supp. 584, 594 (S.D.N.Y. 1996)

(declining to disturb choice of forum in spite of need for Portuguese translator, finding the

language sufficiently common and the relevant information sufficiently translatable).  While

translation and transportation may be difficult or costly for the parties, Mantu has failed to

establish that such inconveniences would effectively deprive it of its "day in court."  *Martinez*,

740 F.3d at 18 (quoting *Bremen*, 407 U.S. at 18); *see also id.* at 17-18 ("Whatever

'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as

[they] agreed to do was clearly foreseeable at the time of contracting.").  Mantu also argues that,

as it is incorporated in Israel, Israeli law will govern in adjudicating Plaintiff's claims of breach

of fiduciary duty.  The interest in avoiding the application of foreign law is a public concern that

may be considered by the Court.  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002)

(listing as a public interest "avoiding difficult problems in conflict of laws and the application of

foreign law").  Even if the argument is credited, however, declining to enforce the forum

selection clause would not further this interest; rather, the result would be an Israeli court

applying New York state law to a majority of Plaintiff's claims.  The Court thus finds the

possibility of applying Israeli law to some claims an inadequate public interest factor to warrant

disturbing the parties' forum selection agreement.

    Finally, Mantu argues that this Court will be unable to enforce any judgment, as

Defendants are located in Israel.  As an initial matter, it is plausible that judgment enforceability

is best understood as a private interest, *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–09

(1947) (contemplating enforceability of judgment as a private interest), and thus outside the

scope of consideration for the present purpose, *see Atl. Marine Const. Co. v. U.S. Dist. Court for

W. Dist. of Texas*, 571 U.S. 49, 51 (2013) ("[T]he court should not consider the parties' private

interests aside from those embodied in the forum-selection clause; it may consider only public

interests.").  Regardless of its proper categorization, particularly in the absence of any objections

from the Plaintiff, the party that would be affected by any difficulties in enforcement, this Court

does not find this factor to overcome the heavy weight of the validly negotiated forum selection

clause.  Mantu has not rebutted the presumption of enforceability of the forum selection clause in

the Agreement.  Accordingly, because Mantu is party to the Agreement, it is within the personal

jurisdiction of the Court.

### 3.  Eliezer and Niryaev

Defendants move to dismiss the claims against Eliezer and Niryaev, claiming that the

Plaintiff fails to establish personal jurisdiction over them.  Dkt. No. 70, 6-10.  Plaintiff alleges

that the forum selection clause allows this Court to exercise personal jurisdiction over Eliezer

and Niryaev, given their close relationship to Mantu and their signing of the Agreement and the

forum selection clause therein.  Dkt No. 77, 9.  Eliezer and Niryaev each signed the Agreement

in his capacity as co-CEO of Mantu.  Dkt. No. 71-1; Dkt. No. 68 ¶ 7.  They also both met with

the Plaintiff in California.  Dkt. No. 68 ¶ 42.

The question of whether a court may exercise personal jurisdiction on the basis of a

forum selection clause over an individual who did not sign the forum selection clause in his

individual capacity has elicited a fair amount of discussion in the courts of the Second Circuit.  A

number of courts in this Circuit have exercised personal jurisdiction over non-parties to an

agreement containing a forum selection clause on the basis of their close relationship to one of the parties to the agreement. *See, e.g., LaRoss Partners, LLC v. Contact 911 Inc*., 874 F. Supp. 2d 147, 159-61 (E.D.N.Y. 2012) (exercising personal jurisdiction over a non-signatory, in part, on the theory it was "closely related" to signatory of the clause based on close business relationships and alleged subsidiary functions); *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.,* 875 F. Supp. 2d 297, 310-11 (S.D.N.Y. 2012) (holding that a forum selection agreement established personal jurisdiction over both a non-signatory successor-in-interest and a non-signatory individual who was a shareholder and one of only five corporate officers in the signing company and had substantial connections to the financing efforts related to the causes of action); *Firefly Equities LLC v. Ultimate Combustion Co.,* 736 F. Supp. 2d 797 (S.D.N.Y. 2010) (exercising personal jurisdiction over corporate representative who signed forum selection agreement on behalf of his company); *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 2003 WL 22882137, at *5-6 (S.D.N.Y. Dec. 4, 2003) (holding that a forum selection agreement established personal jurisdiction over an individual defendant because she was Chief Financial Officer in the signatory company). These courts justify their exercise of personal jurisdiction over those closely related to parties to a forum selection clause on the grounds that such exercise is foreseeable, and thus not unfair. This reasoning allays the practical concern that, absent the exercise of personal jurisdiction, the promise of the forum selection clause to centralize disputes in a single location would at best be significantly diminished and, at worst, be rendered close to illusory.

More recently, however, another judge in this District has questioned the almost uniform application of forum selection clauses to parties by virtue of their "close relationship" to signatories. *Arcadia Biosciences, Inc. v. Vilmorin & Cie,* 356 F. Supp. 3d 379, 394 (S.D.N.Y.

2019).  The Second Circuit has not yet reached the issue.  *See Magi XXI, Inc. v. State della Citta del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013).

The Court concludes that the appropriate approach to the issue and the one most consistent with the results in the binding case law and the applicable statutes is similar to that of Judge Rakoff in *Arcadia Biosciences*.  356 F. Supp. 3d at 394.  A court should first analyze whether the non-party is otherwise bound to the agreement, as for example under the ordinary law of successor liability and alter ego applicable to all other contractual provisions.  If the non-party would be bound to the contract either as a successor or as an alter ego, he or she ordinarily would also be bound to the forum selection clause.  Unless the forum selection clause limited its force explicitly to the named contractual parties, there would be no reason to treat it differently than all of the other contractual provisions binding the non-party.  For example, in *Aguas Lenders Recovery Grp. v., Suez, S.A.*, 585 F.3d 696 (2d Cir. 2009), the Second Circuit held that a successor corporation that otherwise was bound by and had assumed the contractual obligations of its predecessor under the state law of successor liability was also bound by the mandatory forum selection clause reflected in that agreement.  It reasoned, "a forum selection clause is integral to the obligations of the overall contract, and a successor in interest should no more be able to evade it than any other obligation under the agreement."  *Id.* at 701.

The Court, however, has identified no law that would require it to disregard the state law and federal constitutional principles otherwise applicable in determining whether personal jurisdiction lies against a person who signs only in an official capacity.  Rather, the law is clear that, in the absence of consent, a court may exercise jurisdiction over an individual only after ensuring that exercise is consistent with the personal jurisdiction granted to the courts of the forum state by its legislature and consistent with federal due process principles.  *D.H. Blair,* 462

F.3d at 104 (holding that "absent consent" "the issue of personal jurisdiction is governed by the law of the forum state, here, . . . New York's long arm-statute, so long as the district court's exercise of jurisdiction comports with the requirements of due process.") (internal citations omitted).[2]  There is no separate law applicable to persons who affix their signature onto corporate documents in their official capacity only.  That analysis decides this case.

Plaintiff does not allege that, in signing the Agreement on behalf of Mantu, Eliezer or Niryaev intended to bind themselves personally to any of its terms, including the forum selection clause.  The parties to the Agreement were Mantu and HSM, not Eliezer and Niryaev.  Dkt. No. 71-1, 2.  The signature block makes clear that Eliezer and Niryaev are signing solely in their respective capacities as corporate officers of Mantu and not in their individual capacities.  It states that the Agreement is "Agreed and Accepted: Mantu I.M. Mobile Ltd By" and then lists the two individuals with their names and corporate titles.  *Id.* 6.  There is no reflection in the body of the Agreement that the two individuals signed in anything other than a corporate capacity and no allegation in the Complaint that they were asked to or did sign in their individual capacities.  *See, e.g., Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 8, 10 (2d Cir. 2012) (holding that "[f]or a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity," and in making this determination, "it is not sufficient to look only at the signature line in isolation . . . [w]hat is written on the signature line must be understood in light of the entire agreement."); *Schwartz v. Sensei, LLC*, 2020 WL 5817010, at *11 (S.D.N.Y. Sept. 30, 2020) ("New York law

---

[2] Although *Aguas Lenders,* 585 F.3d 696, is occasionally taken for the proposition that the court may exercise jurisdiction over a non-signatory as long as the exercise of jurisdiction would be foreseeable, the Court reads the case to stand for the more limited proposition that when a person is otherwise bound by state law to the terms of a contract he or she cannot avoid its forum selection clause.

requires 'clear and explicit evidence' of such intention to bind an individual to a contract signed on a corporation's behalf.") (citing *Novak v. Scarborough Alliance Corp.*, 481 F. Supp. 2d 289, 294 (S.D.N.Y. 2007)).  "It is well-established that an 'agent will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'"  *Bonnant*, 467 F. App'x 4 at 17 (quoting *Mencher v. Weiss*, 306 N.Y. 1, 114 (1953)).

Plaintiff contends, alternatively, that Eliezer and Niryaev are bound to the Agreement and its forum selection clause as alter-egos of Mantu.  The parties dispute the law applicable to a determination of alter ego status.  Plaintiff assumes New York law controls the determination, while Defendants suggest that the more restrictive Israeli law applies.  The Court assumes, *arguendo*, that Plaintiff is correct that New York law governs this determination.  That law is more generous to Plaintiff.  Even assuming that New York law applies however, Plaintiff's allegations are insufficient to establish alter-ego status.

"Under New York law, if a court has personal jurisdiction over a defendant, it may also exercise personal jurisdiction over an alter ego defendant."  *In re Platinum-Beechwood Litigation*, 427 F.Supp.3d 395, 469 (S.D.N.Y. 2019) (quoting *Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd.*, 2019 WL 1762889, at *5 (N.D.N.Y. Apr. 22, 2019)); *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("[T]he exercise of personal jurisdiction over an alter ego corporation does not offend due process.").  "'[A]lter egos are treated as one entity' for jurisdictional purposes."  *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 142–143 (2d Cir.1991).  In determining whether an entity is properly understood as another's alter-ego for jurisdictional purposes, courts consider

"whether there was a failure to observe corporate formalities, evidence of undercapitalization, intermingling of personal and corporate funds, shared office space and phone numbers, any overlap in ownership and directors and whether the corporation was used to perpetrate a wrongful act against the plaintiffs." *Cardell Fin. Corp v. Suchodolski Assocs*., 2012 WL 12932049, at *20 (S.D.N.Y. July 17, 2012). "No one factor is determinative, but rather the key inquiry is whether the corporation 'is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends.'" *Id.* (citing *Miramax Film Corp. v. Abraham*, 2003 WL 22832384, *8 (S.D.N.Y. Nov. 25, 2003)).

Plaintiff does not make sufficient allegations of fact to create an inference that Eliezer and Niryaev are Mantu's alter-egos. Plaintiff alleges generally that the founders, officers, ownership, and decision-making authorities of Mantu and Beezz are materially the same, and generally that the individual defendants collectively exercise ultimate control over both Mantu and Beezz and direct the revenues and proceeds of each. Dkt. No. 68 ¶ 192. Plaintiff alleges in conclusory terms that Mantu and Beezz's corporate formalities have been disregarded. *Id.* ¶¶ 45, 185, 193. Eliezer allegedly admitted to Plaintiff that the financial assets and affairs of both businesses were commingled and that the individual defendants used Plaintiff's investment to compensate themselves for work on behalf of Beezz. *Id.* ¶ 60. Eliezer also allegedly told Plaintiff that Mantu was a sham used to solicit Plaintiff's investment so it could be used for Beezz. *Id.* ¶ 61.

Mere conclusory allegations are not enough to establish jurisdiction. *See Gmurzynska v. Hutton,* 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004). It is thus insufficient for Plaintiff to assert the conclusion that the entities did not observe corporate formalities and that the Individual Defendants collectively exercise ultimate control over the

same entities and direct the revenues of each.  Rather, Plaintiff must allege facts to support its conclusions.  Plaintiff specifically alleges that Eliezer and Niryaev are founders and co-CEOs of Mantu, as well as major shareholders.  Dkt. No. 68 ¶¶ 21-22. Shared ownership, however, is insufficient basis for this Court to exercise personal jurisdiction under the alter ego theory.  *See Cardell Fin. Corp.,* 2012 WL 12932049 at \*24.  "[E]ven in cases of substantial overlap [of ownership], a plaintiff must show not only the opportunity to exercise control, but actual domination," *id.,* which Plaintiff has failed to do here.  Eliezer's alleged admissions of Mantu's status as a sham entity weigh in Plaintiff's favor.  Dkt. No. 68 ¶ 61.  The ultimate inquiry for this Court, however, is whether the Plaintiff has plausibly alleged that "the corporation 'is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends.'"  *Cardell Fin. Corp*, 2012 WL 12932049 at \*20.  Ultimately, that inquiry centers on the facts about the corporation, its structure, and relationships.  The inquiry cannot be satisfied by the statements of a single defendant alone.  Thus, Plaintiff's allegations are insufficient to establish that Mantu is dominated and merely being used by Eliezer and Niryaev to advance their own personal interests and thus to establish jurisdiction over them on an alter ego theory.

Even if Eliezer and Niryaev are not subject to his Court's jurisdiction because of the forum selection clause or under an alter ego theory, the Court may exercise personal jurisdiction if such exercise otherwise satisfies (1) the standards established by the New York legislature for the exercise of jurisdiction by its courts and federal courts sitting in diversity and (2) the standards of the due process clause of the United States Constitution.  Plaintiff, however, fails to make sufficient allegations that would subject Eliezer and Niryaev to either the general or specific jurisdiction of this Court under New York law.

Plaintiff must separately allege personal jurisdiction for each of the sixteen causes of action brought against Eliezer and Niryaev.  *See, e.g., Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to each claim asserted.") (emphasis in original).  The causes of action pleaded against Eliezer and Niryaev are: conversion (first cause of action), fraud and deceit (second cause of action), fraudulent concealment in violation of California law (third cause of action), fraudulent inducement (fourth cause of action), fraudulent concealment in violation of New York law (fifth cause of action), negligent misrepresentation in violation of California law (sixth cause of action), negligent misrepresentation in violation of New York law (seventh cause of action), unlawful business practices in violation of California law (eighth cause of action), deceptive practices in violation of New York law (ninth cause of action), breach of fiduciary duty under California Law (twelfth cause of action), breach of fiduciary duty under New York law (thirteenth cause of action), money had and received under California law (sixteenth cause of action), voidable transfer  (eighteenth cause of action), restitution (nineteenth cause of action). The two are not sued for breach of contract or on the basis of any covenant in the Agreement.

Each of the claims against Eliezer and Niryaev is based either on inducement of Plaintiff's investment or on the subsequent usage of the investment.  The only factual allegations supporting personal jurisdiction over Eliezer and Niryaev, apart from their signature on the Agreement, are emails Eliezer sent "misrepresenting Mantu to Cayre in New York, which Cayre forwarded to the Plaintiff in furtherance of the scheme."  Dkt. No. 68 ¶ 33.  The sole email specifically alleged by the Plaintiff is a November 2015 email from Eliezer, which Cayre forwarded to HSM, copying Niryaev and Moyal.  *Id.* ¶ 35.  The email claimed that Mantu's product offered "complete security to customers," was a "game changer," and would "generate

huge income almost immediately" if marketed properly.  *Id.*  The email also allegedly solicited Plaintiff's $4 million investment in Mantu.  *Id.*

It is not in dispute that Eliezer and Niryaev are not subject to general personal jurisdiction under N.Y. C.P.L.R. § 301.  "A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render it essentially at home in the forum State.'"  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014)).  Plaintiff does not allege any facts that would suggest Eliezer or Niryaev meet this standard.

Plaintiff also fails to make allegations that would establish specific jurisdiction over the two individuals.  New York's long-arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent":

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).

Plaintiff cannot rely on § 302(a)(3), which relates to tortious acts committed outside New York State that cause injury to person or property within the state.  Although Plaintiff alleges "Defendants' wrongful conduct was intended to, and did harm HSM through fraudulent

inducement into a sham contract in which Mantu agreed to a New York forum and New York

law," *id.* ¶ 66, Plaintiff is incorporated in Delaware and located in California.  It does not allege

it suffered harm in New York.  Nor can Plaintiff rely on § 302(a)(2), which requires that a

defendant have been physically present in New York at the time of committing the tortious act.

*Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 46 (2d Cir. 2016) ("[A] defendant's physical

presence in New York is a prerequisite to jurisdiction under § 302(a)(2).") (quoting *Bank*

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999)).  Plaintiff

does not allege that Eliezer or Niryaev were present in New York at any of the times in question.

Plaintiff's allegations are best understood to claim jurisdiction under C.P.L.R. §

302(a)(1).  "To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(1), Plaintiff must allege that a

defendant has 'transacted business' in New York and the claim asserted arises from that business

activity."  *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 2521448, at *3 (S.D.N.Y.

May 18, 2020) (citing *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015));

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013)).  "With respect to the first

part of the test for jurisdiction under section 302(a)(1), New York courts define 'transact[ing]

business' as purposeful activity—'some act by which the defendant purposefully avails itself of

the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws.'"  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)

(quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 283 N.Y.S.2d 34, 37–38 (1967)).  "The

plaintiff must also establish 'some articulable nexus between the business transacted and the

cause of action sued upon.'"  *DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *3

(S.D.N.Y. Feb. 5, 2014) (quoting *SPCA of Upstate New York, Inc. v. Am. Working Collie Ass'n*,

18 N.Y.3d 400, 404 (2012)).

Plaintiff's allegations fail to support personal jurisdiction under the long-arm statute for any of the causes of action against Eliezer and Niryaev.  Plaintiff has failed to make specific allegations that would allow this Court to conclude that Eliezer and Niryaev purposefully availed themselves of the benefits and protections of New York.  As an initial matter, by Plaintiff's own account, Cayre is rather peripatetic.  He owns real estate in New York, Chicago, and Miami, Dkt. No. 68, ¶ 2, and solicited Plaintiff's investment and made the relevant introductions while in California, *id.* ¶ 3, 5.  Plaintiff does not allege that Eliezer or Niryaev knew or should have known that Cayre was in New York at the time Eliezer sent the November 2015 email to Cayre, much less that either Eliezer or Niryaev sought to avail themselves of New York law through this exchange.  It appears to be mere happenstance that Cayre was in New York at the time; he could just as easily have been in any state in the Union and since New York was simply a transit station for the message between its origin in Israel and its destination in California, the sending of the email does not reflect any purposeful availment of New York.  Nor does Plaintiff allege that Eliezer and Niryaev instructed Cayre to forward the November 2015 email to Plaintiff or otherwise engage the Plaintiff while Cayre was located in New York and under the jurisdiction of its laws.  Plaintiff has failed to allege that Cayre's presence in New York at the time he forwarded any communications from Eliezer or Niryaev was any more than a coincidence.  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006) ("A connection that is 'merely coincidental' is insufficient to support jurisdiction.").

Even with the benefit of more detailed allegations, courts in this district have declined to exercise jurisdiction in similar circumstances.  *See, e.g., RBC Capital Markets, LLC v. Garcia Hamilton & Assocs.*, LP, 2021 WL 230194, at *4 (S.D.N.Y. Jan. 22, 2021) (declining to exercise personal jurisdiction on the basis of the defendant's calls and correspondence with parties in the

forum state when the "center of gravity for the transaction" was outside the forum state); *Kogan Law Grp., P.C. v. Brace,* 2020 WL 5038764, at *9 (S.D.N.Y. Aug. 26, 2020) (declining to exercise personal jurisdiction over defendants on the basis of their calls and emails to another defendant in New York, holding that it would be unreasonable to conclude that "anytime a defendant calls or emails a New Yorker, she purposefully avails herself of the privilege of doing business in New York.").

Thus, personal jurisdiction is lacking over Eliezer and Niryaev.  The only connection between Eliezer and Niryaev and New York is that they affixed their signatures on behalf of the corporation of which they were an officer to a contract that provided for a New York forum.  In all other respects, Eliezer and Niryaev are distant from New York.  The underlying transaction in connection with which they affixed their signatures was between an Israeli corporation and a California corporation, negotiated between California and Israel.  The only connection the transaction bore to New York was incidental.  The parties appear to have chosen New York as a forum not because of its relationship to the parties, but out of convenience.  Eliezer and Niryaev are not New York residents and are not alleged ever to have entered New York.  They did not interact with Plaintiff in New York and neither they nor any of their co-defendants (or anyone with whom they have been plausibly alleged to have conspired) committed any tortious act in New York.

Plaintiff's argument to the contrary is not persuasive.  That argument turns, for the most part, on the assumption that because Eliezer and Niryaev are closely related to Mantu as its officers and founders and because they agreed to the forum selection agreement, it is not unjust to enforce the clause against them.  Plaintiff claims that they could have foreseen that the clause would be enforced against them.  But "foreseeability" is a moniker attached to conduct that is

27

sufficient to make it reasonable for the court to exercise power over an individual.  A plaintiff

cannot manufacture personal jurisdiction by telling the putative defendant that if he misbehaves

he will be sued in New York, no matter how credible the threat.  Under federal law, the exercise

of jurisdiction by a court does not turn just on whether the defendant could anticipate being sued

in the forum, but on whether the defendant has taken some act that either evinces its consent to

being sued in the forum or that gives rise to the court's power to assert jurisdiction in the absence

of consent.  *D.H. Blair*, 462 F.3d at 103-04.  This is not a case where facts are alleged that

Defendants are abusing the corporate form by undertaking obligations in a personal capacity and

then using the corporate identity to shield themselves from jurisdiction.  In the absence of either

consent or acts sufficient to satisfy long-arm jurisdiction and due process, the Court has no

power over Eliezer and Niryaev.  While the analysis here is admittedly different than that

undertaken by other courts, it does not depart from the results in those other cases and is

congruent with the principles of New York law and the due process clause.

The cases cited by Plaintiff suggesting that the Court may exercise personal jurisdiction

over Eliezer and Niryaev on the basis of the forum selection clause are distinguishable on their

facts.[3]  In *GlaxoSmithKline LLC v. Laclede, Inc.,* 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23,

2019), for example, the court exercised personal jurisdiction on the basis of a forum selection

clause over two individuals who signed in an official capacity the asset purchase agreement

containing that clause.  The relevant claim asserted that the individuals (and the company which

was party to the asset purchase agreement) had breached a non-compete provision.  *Id.* at *1.  In

---

[3] The Court does not include in this consideration cases cited by Plaintiff that relate only to *forum non conveniens,* improper venue, or some other matter apart from personal jurisdiction. Such cases are inapposite, as personal jurisdictional questions uniquely implicate the limits of a court's powers.

*GlaxoSmithKline,* unlike in the present case, not only were the two individuals the sole

shareholders and officers of the company but the non-compete provisions in the agreement also

bound them personally. *Id.* In that circumstance, the court found it was clear that the individuals

were closely related enough that they should be bound by the forum selection clause. *Id.* at *2.

In *BMW of N Am. LLC v. M/V Courage,* 254 F. Supp.3d 591, 598 (S.D.N.Y. 2017), the court

held that persons who were not parties to a Bill of Lading but were its beneficiaries could

enforce a forum selection clause *against* a corporate defendant who agreed in the Bill of Lading

to subject itself to the federal courts of New York with respect to any dispute arising under the

Bill of Lading. The court held that, "[w]ith respect to claims against [the defendant] brought by

the other parties, the law is clear that 'a broad forum selection clause governing 'all' claims

arising under [a] bill of lading'—like the forum selection clause here—'extends to non-

signatories connected to the carriage even where those claims arise outside the four corners of

the contract itself (i.e., tort or bailment liability)." *Id.* at 597-98 (quoting *AIG Mexico Seguros

Interamericana, A.S. de C.V. v. N/V Zapoteca*, 844 F. Supp.2d 440, 442 (S.D.N.Y. 2012)). The

other cases cited by Plaintiff are similarly distinguishable on the facts. *See Firefly Equities,* 736

F. Supp. 2d (exercising personal jurisdiction where plaintiff alleged that signatory defendant met

with plaintiffs on numerous occasions, including at the defendant's apartment, negotiated the

terms of the agreement, and personally made various demands from the plaintiff); *Metro-

Goldwyn-Mayer Studios Inc. v. Canal+ Distrib. S.A.S.*, 2010 WL 537583, at *4-5 (S.D.N.Y. Feb.

9, 2010) (holding that the forum selection agreement established personal jurisdiction over

corporation that was successor-in-interest of signatory, as well as over the company that owned

100% of the successor-in-interest's shares); *Universal Inv. Advisory SA v. Bakrie Telecom PTE,

Ltd.*, 62 N.Y.S.3d 1, 8 (2017) (granting plaintiff's request for jurisdictional discovery regarding

senior management officers alleged to have marketed an agreement despite knowing that the company would be incapable of fulfilling the terms of the agreement).

The rule works no hardship either on parties or on the administration of justice, nor does it create undue uncertainty in the enforcement of forum selection clauses.  Corporate representatives are asked to sign corporate documents in numerous different circumstances. There will be occasions when a representative is asked to sign on behalf of a large corporation simply because she possesses the relevant signatory authority and is available even though she had no involvement in the negotiation of the agreement and will have no involvement in its execution.  Other times, a person will sign because she was the primary negotiator of the agreement or is a sole proprietor.  Sometimes, the forum will be chosen because it is a location that bears a relationship to the negotiation or execution of an agreement.  Other times, it may be chosen because it is located geographically equidistant between the parties and has a well-developed judicial system.  The same result need not follow when an officer involved in a negotiation signs a forum selection clause designating a forum that has a relationship to the transaction as when an officer distant to the transaction and as a matter of convenience signs a contract that selects a forum that has no relationship to the transaction also as a matter of convenience.  In each case, the Court must examine the relevant allegations and evidence with respect to the individual the plaintiff seeks to hale into court. Persons may still be bound when they are found to be alter-egos or successors-in-interest of the signatory.  If desired, parties may draft the contract so as to bind corporate officers in their individual capacities to the forum selection agreement.  None of these circumstances, however, are present here.

### 4.  Jdanov, Hamo, and Raskansky

Defendants move to dismiss the claims against Jdanov, Hamo, and Raskansky, claiming that the Plaintiff fails to establish personal jurisdiction.  Dkt. No. 70 at 6-10.  Plaintiff claims that, Jdanov, Hamo, and Raskansky, as founders and major shareholders, are closely related to Mantu and should also be bound by the forum selection agreement.  This Court finds no basis for enforcing the forum selection clause against these three individual defendants.

Nothing among the Plaintiff's allegations would support the conclusion that Jdanov, Hamo, and Raskansky consented to this Court's jurisdiction through the forum selection clause or any other means.  Plaintiff makes no factual allegations specific to Jdanov, Hamo, and Raskansky, aside from their roles as Mantu and Beezz's founders and shareholders.  Dkt. No. 68, ¶¶ 23-26.  They did not sign the Agreement, nor are they specifically alleged to have been involved in its consummation or execution.  Nor does Plaintiff allege any other acts that would indicate that the three intended to be bound by the Agreement in their individual capacities or have since assumed the obligations of the contract in their individual capacities.  Further, on the basis set out in the preceding section, the Plaintiff's allegations are insufficient to establish that the individual defendants are Mantu's alter-ego.  Plaintiff fails to make any specific allegations as to any of these three defendants, much less that these defendants intermingled their personal funds with corporate accounts, dominated Mantu's actions, or took other steps that would justify a finding of alter ego status.

Plaintiff also does not allege any acts that would subject the three to New York's long-arm jurisdiction.  Jdanov, Hamo, and Raskansky are possibly intended to be swept up in the allegation that "Defendants sent emails misrepresenting Mantu to Cayre in New York" which were then forwarded to the Plaintiff.  *Id.* ¶ 33.  In relying only on group pleadings, in which it conflates multiple parties and fails to provide specific allegations, Plaintiff neglects its burden of

establishing personal jurisdiction over each defendant.  *See King County v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) ("A plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over each defendant.").  Moreover, as detailed above, these emails are insufficient basis to conclude that the individual defendants engaged in a business transaction under C.P.L.R. § 302(a)(1) and purposefully availed themselves of the laws of New York.  The Court therefore declines to exercise personal jurisdiction over Jdanov, Hamo, and Raskansky.

### 5.  Beezz

Plaintiff argues that this Court has personal jurisdiction over Beezz as an alter-ego of Mantu.  Plaintiff relies primarily on the allegations that: (1) both Mantu and Beezz were founded and, on information and belief, are owned by the same individuals, except that HSM does not hold shares in Beezz; (2) corporate formalities have been disregarded; (3) Beezz and Mantu share a unity of interest with one another and with the individual defendants; (4) Beezz and Mantu commingled funds; and (5) Eliezer told Plaintiff that Mantu was a "sham."  Dkt. No. 68, ¶¶ 11, 14, 38, 42, 44-46, 49, 60, 61, 187, 195.  Plaintiff alleges that "[a]ll of the individual Defendants collectively exercise ultimate control over each of [Mantu and Beezz—which are alleged to be sham entities] and direct the revenue and proceeds of each," and "[o]n information and belief, the officers and, ownership and decision-making authority of both Sham Entities are the same."  *Id.* ¶ 44.

The Court assumes, *arguendo,* that New York law applies, as opposed to the more demanding Israeli law.  "In determining whether a parent exercised 'complete domination' over its subsidiary for the purposes of this analysis, courts consider such factors as: '(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in

ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.'" *Wolet Capital Corp. v. Walmart Inc.*, 2021 WL 242297, at *5 (S.D.N.Y. Jan. 25, 2021) (quoting *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)).  Such allegations will be dismissed for failure to state a claim when they are comprised only of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555.

There are multiple flaws in Plaintiff's argument.  Ownership or founding members may help support a conclusion that two corporations are alter egos, but alone is not enough to establish alter ego status.  *Island Seafood Co. v. Golub Corp.*, 759 N.Y.S.2d 768, 770-71 (3d Dep't 2003).  It is routine, and certainly not uncommon, that the same group of founders will establish separate corporations for liability management or other operational purposes.  The fact that a single group of owners or founders have chosen to organize their affairs through separate corporations does not make each corporation the alter ego of the other.  Plaintiff's allegations as to corporate formalities are purely conclusory and amount to no more than a recitation of the elements.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *see also Metropolitan Transp. Auth.*, 497 N.Y.S.2d at 675 ("Mere conclusory allegations that the corporate structure is a sham are insufficient to warrant piercing the corporate veil.").  Even viewed in the light most favorable to

the Plaintiff, the facts alleged are insufficient to satisfy the "heavy burden" necessary to pierce the corporate veil or to establish an alter ego relationship. *TNS Holdings v. MKI Sec. Corp.*, 680 N.Y.S.2d 891, 893 (1998).[4]  Plaintiff asserts no alternative basis for asserting jurisdiction over Beezz, and the Court accordingly declines to exercise jurisdiction over Beezz.

Based on the preceding analysis, the Court dismisses all counts against Beezz, Niryaev, Eliezer, Jdanov, Hamo, and Raskansky.  In considering the remaining issues, the Court will limit analysis to Mantu, Cayre, and Moyal, the defendants over which the Court can properly exercise jurisdiction.

### B. *Forum Non Conveniens*

While Defendants moved for dismissal on *forum non conveniens* grounds in relation to other parties, they do not object to a New York forum for the claims against Mantu, Cayre, or Moyal.  The Court accordingly declines to dismiss on *forum non conveniens* grounds.

### C. Sufficiency of the Pleadings

Cause of Action No. 1: Conversion under California Law

Plaintiff argues that the Defendants are liable for conversion because they used Plaintiff's investment for purposes to which Plaintiff did not consent and because they did not return Plaintiff's money upon request.  Dkt. No. 68, ¶¶ 64-69.  Plaintiff contends that it was harmed by these actions.  *Id.* ¶ 68.  Defendants move to dismiss on the grounds that Plaintiff paid Mantu $4

---

[4] In addition, Plaintiff's allegations of the alter ego status of each defendant is stated to be "on information and belief" without any allegations to support the basis for such information or belief.  *See Brodie v. Green Spot Foods, LLC*, 2020 WL 7027594, at *7 (S.D.N.Y. Nov. 30, 2020) ("Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief").

million in exchange for Mantu shares, which it received, and so its funds were not converted.[5]
Dkt. No. 70 at 10.

To state a claim for conversion, Plaintiff must make a *prima facie* showing of (1)
Plaintiff's ownership or right to possession of the property; (2) the wrongful exercise of control
over Plaintiff's property; and (3) damages. *Plummer v. Day/Eisenberg, LLP*, 184 Cal. App. 4th
38, 45-46 (2010), *as modified on denial of reh'g* (May 21, 2010). Conversion is a strict liability
tort, and thus "questions of the defendant's good faith, knowledge, and motive are ordinarily
immaterial." *Burlesci v. Petersen,* 68 Cal. App. 4th 1062, 1065 (1998). "[T]he law is well
settled that there can be no conversion where an owner either expressly or impliedly assents to or
ratifies the taking, use or disposition of his property." *Bank of N.Y. v. Fremont Gen. Corp.*, 523
F.3d 902, 914 (2008) (quoting *Farrington v. A. Teichert & Son,* 59 Cal. App. 2d 468, 474
(1943)). "A plaintiff in a conversion action must . . . prove that it did not consent to the
defendant's exercise of dominion." *Id.* If the plaintiff consented to the property's removal, no
conversion action exists. *Id.*

Here, Plaintiff has failed to allege that it did not consent to the defendant's exercise of
dominion over its property. In fact, in the Complaint, Plaintiff avers that it entered into an
agreement with Defendants, in which it voluntarily provided Defendants the $4 million payment
in question. The Agreement by which Plaintiff provided this payment required only that the

---

[5] Defendant additionally moves to dismiss on this and the other counts of action brought under
California law on the basis of the Agreement's choice-of-law provision. The Agreement provides
that "[t]his Agreement shall be governed by and construed in accordance with the laws of the
State of New York." Dkt. No. 71-1 at 3. As for claims that are brought "under or in relation to
the Agreement," the parties required that such actions be brought in court in Manhattan, New
York, and they consented to the jurisdiction of such courts. They did not, however, require that
actions "under or in relation to the Agreement" be governed by the laws of the State of New
York. Accordingly, this Court will consider claims brought under California law if there is a
basis to do so.

Defendants furnish Plaintiff with 4,414 Mantu shares.  There is no dispute that Defendants have done so.  Once Plaintiff invested those sums in Mantu, the directors and officers of Mantu were free to use the funds in whatever manner they believed, in the exercise of their fiduciary duties, was in the best interests of Mantu and all of its shareholders.  The Agreement does not restrict how Mantu must use the funds or require that Defendants return the funds to the Plaintiff at any point.  Plaintiff presumably could have negotiated for such a provision but did not.  Thus, Plaintiff cannot complain that its funds were converted when they were used for purposes other than what Plaintiff now says that Mantu should have used them for.  Plaintiff received exactly what it bargained for: the Mantu shares.  Plaintiff does not plausibly allege that Defendants wrongfully exercised dominion over Plaintiff's funds without Plaintiff's consent.

Cause of Action Nos. 2-5: Plaintiff's Fraud Claims (Fraudulent Inducement and Fraudulent Concealment in Violation of New York Law; Fraud, Deceit, and Fraudulent Concealment in Violation of California Common Law and Civil Codes)

Plaintiff alleges that Defendants Cayre, Niryaev, and Eliezer, acting individually and on behalf of Mantu and Beezz, made false and misleading statements of material fact. It alleges Defendants provided false representations as to the state and capabilities of Mantu's products, Mantu's client prospects, and the intended use of Plaintiff's investment in Mantu.  Dkt. No. 68 ¶ 95.  Defendants allegedly led Plaintiff to believe that Plaintiff's investment would be spent on developing particular kinds of projects and products for Mantu, even though they never intended to use Plaintiff's money for that purpose.  *Id.* ¶¶ 97-98.  Specifically, Plaintiff alleges that, in November and December 2015, Cayre provided internal information about Mantu's technology platform and touted it as "an allegedly unrivaled high-security, military-grade encrypted communication platform – as a 'game changer' . . . with enormous competitive promise."  Dkt.

No. 68 ¶ 4.  "Cayre, Eliezer, and Nivyaev represented that Mantu was soliciting financing from Plaintiff to deploy its technology to leading international customers that were already interested in contracting with Mantu, such as the governments of Kazakhstan and Ukraine."  *Id.* ¶ 5. Plaintiff also alleges that "Cayre, Eliezer, and Nivyaev identified multiple customers as being prepared to adopt Mantu's technology once ready for deployment, including customers in South Africa, China, and the Safra Group in Brazil" and "assured Plaintiff that they were soliciting its investment to commercialize the technology to meet the expectations of those and other prospective customers."  *Id.* ¶ 36.  Plaintiff alleges that these representations were knowingly false.  Defendants never intended to use the funds for Mantu's technology.  "In a phone call in early May 2019, Eliezer referred to Mantu in conversations with the Plaintiff as a 'Ponzi' scheme—acknowledging that, from the get-go, Mantu was not the legitimate and promising business touted by Defendants, but instead was a sham used to solicit Plaintiff's investment and then funnel it to pay off obligations owed by, and capitalize, Beezz.  *Id.* ¶ 61.  Plaintiffs do not allege any false misrepresentations by Moyal, Jdavano, Hamo, and Raskansky.

Allegations of fraud are subject to a heightened pleading standard and must be "stated with particularity."  F.R.C.P. 9(b).  In the Second Circuit, a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (internal quotation marks and citations omitted).  Rule 9(b) also requires plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "Allegations that are 'conclusory and unsupported by assertions of fact' are not sufficient to meet the Rule 9(b) standard."  *Coppelson v. Serhant*, 2021 WL 148088, at *6 (S.D.N.Y. Jan. 15, 2021)

(quoting *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)).  Moreover, "the plaintiff must

inform each defendant of the nature of his alleged participation in the fraud," rather than

conflating defendants in vague collective allegations.  *DiVittorio v. Equidyne Extractive Indus.,*

*Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Tera Grp., Inc. v. Citigroup, Inc.*, 2019 WL

3457242, at *11 (S.D.N.Y. July 30, 2019) (holding that "homogenous group allegations" should

be given less weight and, absent "specific allegations that link individual [d]efendants" to the

claims, dismissal is warranted).

Plaintiff fails to satisfy that standard.  It does not allege who said what to whom and

when, generally grouping "Defendants" and "Cayre, Elizer, and Niryaev" together, without

identifying which of the Defendants made a statement that the Plaintiff challenges, when it was

made, and who else was present.  This defect is consequential.  Rule 9(b) is defendant-specific;

each defendant who is charged with fraud is entitled to know with particularity what he said and

why Plaintiff considers it to be untrue and fraudulent.  *See DiVittorio*, 822 F.2d at 1247 ("[F]raud

allegations ought to specify the time, place, speaker, and content of the alleged

misrepresentations [and]. . . [w]here multiple defendants are asked to respond to allegations of

fraud, the complaint should inform each defendant of the nature of his alleged participation in the

fraud."); *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, 2014 WL 3857053, at *15

(S.D.N.Y. Aug. 5, 2014) ("[P]laintiffs must 'specifically plead the circumstances constituting

fraud with respect to each of the Defendants.") (quoting *Clayton's Auto Glass, Inc. v. First Data*

*Corp.*, 2013 WL 5460872 (E.D.N.Y. Sept. 30, 2013)).  Furthermore, this is not a case where

Plaintiff is unaware of who made an allegedly fraudulent statement, to whom, when, and what

was said.  *See, e.g., DiVittorio,* 822 F.2d at 1246 (holding that certain 9(b) pleading standards

may be relaxed where "facts [are] peculiarly within the opposing party's knowledge").  Rather,

the alleged misrepresentations purportedly were made directly to Plaintiff.  Plaintiff has not

provided any excuse for failing to allege with particularity the basis upon which it seeks to hold

each defendant liable for fraud.

Moreover, leaving aside the right of each defendant to know what he has done before

confronting the serious charge of fraud, the Defendants as a group have presented serious

challenges that the fraud claim is barred by the integration clause of the Agreement and that the

alleged misrepresentations are unactionable forward-looking statements or puffery.  Dkt No. 70

at 26-27 & n.4.  Those challenges are serious but depend on the content of what was said.  For

example, while "[i]t is well established that a general, boilerplate disclaimer of a party's

representations cannot defeat a claim for fraud," *Dallas Aerospace, Inc. v. CIS Air Corp,* 352

F.3d 775, 785 (2d Cir. 2003), the applicability of that proposition depends on what was said and

whether the representation was "specifically disclaimed."  *Id.*  To determine, at the motion to

dismiss stage, whether a plaintiff has alleged reasonable reliance, a court considers "the entire

context of the transaction, including . . . the sophistication of the parties, and the content of any

agreements between them."  *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc*., 343 F.3d

189, 195 (2d Cir. 2003) (finding that plaintiff, a sophisticated investor, could not assert reliance

on an oral representation when agreement subsequently executed by the parties lacked mention

of the oral representation and included a standard merger clause); *see also In re Lithium Ion*

*Batteries Antitrust Litig.*, Case No.: 13-MD-2420 YGR, at *27 (N.D. Cal. Jan. 21, 2014) ("The

plaintiff must plead with particularity the circumstances of the concealment and the facts

supporting its due diligence. . . [and] a plaintiff's reliance on any misstatement must be

reasonable under the circumstances.") (internal quotation marks and citations omitted)); *United*

*Guaranty Mtge. Indemnity v. Countrywide Fin,* 660 F. Supp. 2d 1163, 1195 (C.D. Cal. 2009)

("As for fraudulent inducement, reliance on some types of misrepresentations becomes less reasonable when the parties are more sophisticated."). It may be that Plaintiff is able to allege a statement with sufficient concreteness and specificity made by a particular defendant to overcome these objections. But it is equally, if not more, plausible that the statements were of such generality that they could not induce reasonable reliance, particularly in light of the integration clause. Plaintiff cannot circumvent the requirement to plead a statement upon which it reasonably relied by pleading generalities. It is precisely so that the Court can judge whether a statement could induce reasonable reliance at the outset that the law requires the Plaintiff to allege the statements it claims to be fraudulent. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (Rule 9(b)'s pleading requirements necessitate that Plaintiff allege reliance on a specific misrepresentation).

Plaintiff does allege certain statements with the necessary particularity, providing the necessary information about speaker, date, medium, and contents of representation to meet the requirements of Rule 9(b). *See* Dkt. No. 68 ¶¶ 55, 56. Specifically, Plaintiff alleges that Eliezer sent Plaintiff an email on June 19, 2018 claiming that Mantu had "(i) a $1.4 million contract with the Kazakhstan government in its 'final stage'; (ii) projects in Indonesia for $320,000 and $6 million that were scheduled to launch in August and October 2018; and (iii) promising sales demonstrations before Wynn Hotels." *Id.* ¶ 55. Plaintiff also alleges that Eliezer sent an email in August 2018, copying Cayre, Niryaev, and Moyal, and informing Plaintiff the Kazakhstan project was expected to reach $4.89 million in 2019 and that Mantu had developed a $98 million opportunity to sell its technology to the Ukrainian government. *Id.* ¶ 57. But these statements are alleged to have been made after Plaintiff had requested a return of its money on June 18, 2018. *Id.* ¶ 53. Plaintiff does not aver that it recanted its request for return of its investment after

these additional misrepresentations were made, nor has Plaintiff otherwise plausibly alleged that it changed its conduct in reliance on Eliezer's June and August 2018 emails. Thus, while these statements may meet the requirements of Rule 9(b), Plaintiff is unable to establish reliance on the basis of these allegations. *See, e.g., Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 181 (2d Cir. 2007) (in order to allege fraud a plaintiff must show, *inter alia,* "that the plaintiff relied on the misrepresentation and suffered damages as a result"); *Powertech Tech., Inc. v. Tessera, Inc.,* 2014 WL 171830, at *8 (N.D. Cal. Jan. 15, 2014) ("Fraud is only actionable when the plaintiff demonstrates that the defendant's misrepresentation put the plaintiff in a different or worse position.").

The fraud claims against Moyal, Jdavano, Hamo, and Raskansky are dismissed without prejudice for failure to satisfy Rule 9(b). The fraud claims against Mantu and Cayre, to the extent they are based on representations made before Plaintiff requested a return of its investment, are dismissed without prejudice for failure to satisfy Rule 9(b). The fraud claims based on representations made after Plaintiff requested a return of its investment are dismissed with prejudice for failure to allege reliance.

Causes of Action Nos. 6 & 7: Negligent Misrepresentation in Violation of California and New York Law

Plaintiff asserts that, despite their particular duty to provide accurate information about Mantu and Beezz, Defendants provided Plaintiff with false information and made material omissions. Dkt. No. 68, ¶¶ 125-32. Defendants move to dismiss under Rule 9(b) and on the basis of Plaintiff's inability to establish justifiable reliance.

Under New York law, in order to allege negligent misrepresentation Plaintiff must show that:

(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).  Among these factors, Plaintiff must show "that it reasonably or justifiably relied on the misrepresentation."  *PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79, 94 (2d Cir. 2019).  "In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc*., 343 F.3d 189, 195 (2d Cir. 2003).

Under California law, the elements of a negligent misrepresentation claim consist of misrepresentation (false representation, concealment or nondisclosure), knowledge of the falsity, justifiable reliance, and resulting damage.  *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 101 (E.D. Cal. 2010).  Negligent misrepresentation is thus distinguishable from fraud claims in that the plaintiff need not allege intent to induce reliance.  *Id.* (citing *Cadlo v. Owens–Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).

Courts in the Second Circuit are divided as to whether claims of negligent misrepresentation are always subject to a heightened pleading standard under 9(b).  *See Riker v. Premier Capital, LLC,* 2016 WL 5334980, at *5 (S.D.N.Y. Sept. 22, 2016) (collecting cases on both sides).  The majority of courts in the Circuit have applied the heightened pleading standard to all claims of negligent misrepresentation.  *Id.; see also AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) ("[A]ny claim for misrepresentation—either fraudulent or negligent—must meet Rule 9's heightened pleading standards[.]").  A number of

these courts have relied on the Second Circuit's decision in *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 583-84 (2d Cir. 2005), which adopted a district court's use of heightened pleading standards without comment, as support for the proposition that 9(b) standards apply in all cases. *See, e.g., Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 350 (E.D.N.Y. 2014) ("[T]he Second Circuit concluded in no uncertain terms, albeit without much in the way of explanation, that claims for negligent misrepresentation under New York law 'must be pled in accordance with the specificity criteria of Rule 9(b).'") (quoting *Aetna,* 404 F.3d at 583-84)); *Stoltz v. Fage Dairy Processing Indus.*, S.A., No. 14 Civ. 3826, 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015) ("Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b)") (citing *Aetna,* 404 F.3d at 583)). Even those courts that have expressed uncertainty as to whether the 9(b) heightened pleading standard applies in all instances have found it to apply when negligent misrepresentation claims sound in fraud. *See Riker,* 2016 WL 5334980 at *5; *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012).

Here, Plaintiff's negligent misrepresentation claims sound in fraud. In alleging negligent misrepresentation, the Plaintiff incorporates all preceding paragraphs. In such paragraphs, Plaintiff insists upon the knowing deception of the parties, in which they intentionally misled the Plaintiff as to Mantu's prospects and progress. It also brings specific causes of action alleging fraud under New York and California law. This Court accordingly finds Plaintiff's claim of negligent misrepresentation to sound in fraud. *See Woori Bank*, 910 F. Supp. 2d at 705 (concluding that plaintiff's claim of negligent misrepresentation sounded in fraud because their complaint was based on the knowing and intentional actions of defendant); *In re Parmalat Secs. Litig.*, 479 F. Supp. 2d 332, 339 n. 30 (S.D.N.Y.2007) ("The [plaintiff's] claim for negligent

misrepresentation 'realleges and incorporates by reference' all prior allegations, including those alleging fraud, . . . [and] thus alleges intentional, not negligent, misrepresentation and is subject to Rule 9(b)."). Consequently, as described in the preceding subsection, Plaintiff must accord with the heightened 9(b) pleading standards.

For the reasons discussed *supra,* Plaintiff has failed to plead with particularity that Mantu and Cayre made false representations prior to the date on which Plaintiff requested a return of its investment.  Thus, to the extent that Plaintiff's claim of negligent misrepresentation is based on these allegations, it fails under Rule 9(b).  To the extent that Plaintiff relies on statements made after Plaintiff requested a return of its investment, for the reasons discussed *supra* it fails to plausibly allege reliance—a necessary element of negligent misrepresentation under both California and New York law.  The claims of negligent misrepresentation against Mantu and Cayre are accordingly dismissed.

Plaintiff failed to allege any specific negligent misrepresentations by Moyal, and the Court finds insufficient reason to attribute the statements of others to Moyal.  The Plaintiff's sixth and seventh causes of action as to Moyal are accordingly dismissed.

<u>Cause of Action No. 8: Unlawful Business Practices in Violation of California Section 17200</u>

Plaintiff alleges that Defendants engaged in unlawful business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("Section 17200").  Section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice."  The factual basis for Plaintiff's claim is that Defendants solicited Plaintiff's investment under false pretenses and then diverted that money; kept Plaintiff's money by providing Plaintiff with Mantu business updates; and then finally admitted the misconduct and

falsely promised to pay it back.  Dkt. No. 68, ¶ 135.  Defendants move to dismiss alleging that

private contract disputes do not fall within the ambit of Section 17200.  Dkt. No. 80, 17, n.10.

Section 17200 has a broad scope, encompassing "anything that can properly be called a

business practice and that at the same time is forbidden by law . . . including anti-competitive

business practices as well as injuries to consumers, and has as a major purpose the preservation

of fair business competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

163, 180 (1999) (internal quotation marks and citations omitted).  "[T]o state a claim under

[Section 17200] one need not plead and prove the elements of a tort. Instead, one need only show

that 'members of the public are likely to be deceived.'"  *Linear Tech. Corp. v. Applied Materials,*

*Inc.*, 152 Cal. App. 4th 115, 133 (2007).  Section 17200 has the specific intention of protecting

"consumers and competitors by promoting fair competition in commercial markets for goods and

services."  *Kasky v. Nike, Inc*. 27 Cal. 4th 939, 949 (2002).  Despite this broad scope, Section

17200 is inapplicable for an action "based on contracts not involving either the public in general

or individual consumers who are parties to the contracts."  *Linear Tech. Corp.*, 152 Cal. App. 4th

at 135; *see also O.F.I. Imports Inc. v. Gen. Elec. Capital Corp.,* 2016 WL 5376208, at *7

(S.D.N.Y. Sept. 26, 2016) (Section 17200 "does not reach claims based on bilateral contracts

between commercial entities capable of protecting their own interests.").  Plaintiff does not claim

that Defendants' conduct harmed the general public or any individual consumers.  At no point

are Defendants alleged to have broadly advertised this investment opportunity or made it

available to general consumers.  Plaintiff entered into a contractual agreement, which it claims

was "personally" solicited by one the defendants.  Dkt. No. 68, ¶ 2.  California courts have

previously dismissed similar claims for relief in similar circumstances where the alleged victims

are "sophisticated corporate consumers who have entered or will enter their own contracts"

rather than "competitors [or] powerless, unwary consumers." *Linear Tech. Corp.*, 152 Cal. App. 4th at 135*; see also Sacramento E.D.M., Inc. v. Hynes Aviation Indus.* 965 F. Supp. 2d 1141, 1154 (E.D. Cal. 2013) ("[A] UCL claim fails if it lacks any connection to the protection of fair competition or the general public."); *Dillon v. NBCUniversal Media, LLC,* 2013 WL 3581938, at *7 (C.D. Cal. June 18, 2013) ("[D]ismissal of UCL actions is appropriate when the plaintiff is neither a competitor nor a consumer."); *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.,* 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011) ("The case does not involve the general public or individual consumers who are parties to a contract. Rather, it is a dispute between commercial parties over their economic relationship . . . Plaintiffs cannot assert an 'unfair business practice' claim under Section 17200."). Even where a party did not enter into a contractual agreement, if the defendants' action is unlikely to affect the public at large or consumers generally, Section 17200 is not a viable path of relief. *In re Webkinz Antitrust Litig.,* 695 F. Supp. 2d 987, 998 (N.D. Cal. 2010). Given the Plaintiff's sophistication, which it specifically attests to in the Agreement, and the fact that Defendants are not soliciting investments from the public or consumers broadly, Plaintiff cannot bring a claim under Section 17200. Its eighth cause of action is thus dismissed.

Cause of Action No. 9: Deceptive Practices in violation of NY Gen. Bus. § 349

Defendants move to dismiss the ninth cause of action, alleging a violation of N.Y.G.B.L. § 349 ("Section 349"), for failure to state a claim for relief. N.Y.G.B.L. § 349. Plaintiff alleges that Defendants engaged in deceptive practices, including providing false information, which were consumer-oriented in nature. Dkt. No. 68 at 138-39.

"To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the

plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)

(citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*per curiam*)).   In order to

successfully state a claim under Section 349, the Plaintiff must "charge conduct of the defendant

that is consumer-oriented."  *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*,

*N.A.*, 623 N.Y.S.2d 529, 532 (1985).  The critical question is whether "the acts or practices have

a broad impact on consumers at large," *id.* at 532, or "potentially affect[] similarly situated

consumers."  *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d. 430, 449 (E.D.N.Y.

2013) (quoting *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996)).

Section 349 does not apply in a case where "[t]he only parties truly affected by the alleged

misrepresentations . . . are the plaintiff and the defendants."  *Genesco Entm't, Div. of Lymutt*

*Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984); *see also Oswego,* 623 N.Y.S.3d at

532 ("Private contract disputes, unique to the parties, for example, would not fall within the

ambit of the statute.").  A Section 349 claim should also be dismissed if the plaintiff fails to

allege a loss "independent of the loss caused by the alleged breach of contract."  *Spagnola,* 574

F.3d at 74.

         Plaintiff fails to satisfy the requirements for pleading a consumer fraud under Section

349.  The facts alleged in the complaint cannot support a conclusion that Defendants' actions

were consumer-oriented.  Plaintiff fails to allege "conduct which affects the consuming public at

large." *N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 291 (1995).  At no point are Defendants

alleged to have broadly advertised this investment opportunity or made it available to general

consumers. *See, e.g., Coppelson v. Serhant*, 2021 WL 148088, at *5 (S.D.N.Y. Jan. 15, 2021)

(considering transaction's initiation, "advertisements or solicitations," and broader "impact on

consumers generally" in evaluating plaintiff's Section 349 claim).  Rather, Plaintiff was

specifically and individually approached with this investment opportunity.  Dkt. No. 68, ¶ 2.

The facts alleged constitute the paradigmatic private dispute "unique to the parties [that does not]

fall within the ambit" of Section 349.  *Oswego*, 623 N.Y.S.2d at 533.  Plaintiff further fails to

establish that the loss it suffered was greater than the loss of its $4 million through the alleged

breach of contract.  Accordingly, Plaintiff has failed to state a claim that Defendants violated

Section 349.

Causes of Action No. 10 & 11: Breach of Contract under California and New York

Defendants move to dismiss cause of action number ten and eleven on the grounds that

there was no breach of any term in the Agreement and Plaintiff thus fails to state a claim.

Plaintiff contends that Mantu breached its obligations to Plaintiff by diverting the money that

was invested in Mantu to Beezz.  Dkt. No. 68, ¶¶ 146-47.  Plaintiff alleges that it was harmed as

a result.  *Id.* ¶¶ 149-50.

In order to plead a breach of contract claim under New York law, Plaintiff must allege

"(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3)

breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui,* 91 F.3d 337, 348

(2d Cir. 1996).  To plead a breach of contract, the "plaintiff must identify what provisions of the

contract were breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc.*, 171 F. Supp.

2d 354, 358 (S.D.N.Y. 2001).  The standard in California is similar.  "Under California law, to

state a claim for breach of contract a plaintiff must plead [1] the contract, [2] plaintiffs'

performance (or excuse for nonperformance), [3] defendant's breach, and [4] damage to plaintiff

therefrom."  *In re Anthem, Inc. Data Breach Litig.,* 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016)

(quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012)).

Plaintiff fails to establish Defendants' breach, a necessary element under either state's laws. The Agreement required Mantu to deliver 4,414 shares to the Plaintiff upon payment of $4 million. Dkt. No. 71-1 at 4. There is no dispute that Mantu did so. The Agreement places no further obligations on Mantu, nor contains any covenants as to how the funds will be used once the investment is made. Dkt. No. 71-1 at 2-6. Once the investment was made and the shares were issued, Plaintiff's protection resided in the law of fiduciary duty or fraud and not in the law of contract. Accordingly, Plaintiff has not alleged a claim for breach of contract.

In its opposition to the Defendants' motion to dismiss, Plaintiff additionally argues that Defendants have transgressed the implied covenant of good faith under California and New York law. Specifically, Plaintiff claims that "all contracts imply a covenant of good faith and fair dealing[.]" *511 W. 232nd Owners Corp. v. Jennifer Realty Co.,* 773 N.E.2d 496 (N.Y. 2002); *Thrifty Payless, Inc. v. The Americana at Brand, LLC,* 160 Cal. Rptr. 3d 718, 729 (Cal. Ct. App. 2013). It argues that Mantu failed to conduct itself in accordance with this good faith covenant in dealing with the Plaintiff. Plaintiff asserted no such claim in its Complaint. As a plaintiff may not amend its pleadings by presenting new theories in its briefing, this argument is disregarded. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting plaintiff's argument regarding a duty that was claimed "for the first time in . . . opposition memoranda to the motion to dismiss").

<u>Causes of Action Nos. 12 & 13: Breach of Fiduciary Duty under California Law and New York Law</u>

Plaintiff alleges that the individual defendants, Cayre and Moyal, as controlling majority shareholders, owed Plaintiff fiduciary duties, including a duty not to engage in oppressive actions, a duty of reasonable care, a duty of loyalty, a duty of confidentiality, and a duty to avoid

self-dealing.  Dkt. No. 68, ¶ 163.  Contrary to this duty, alleges Plaintiff, the majority

shareholders took actions to benefit majority shareholders to the detriment of the Plaintiff

including: (1) failing the provide value for the payments they received from Plaintiff, (2)

"raiding the company's funds and stealing its corporate opportunities," and (3) misrepresenting

and omitting material facts.  *Id.* ¶ 165.  Plaintiff alleges it was harmed as a result.  *Id.* ¶ 166.

Defendants move to dismiss this claim on the basis that, as Mantu is incorporated in Israel,

neither New York nor California law may govern this determination.

   The Plaintiff contends that, because of the choice of law provision of the Agreement,

New York state law must govern the Court's determination of breach of fiduciary duty.  The

Second Circuit has held that a party may consent to the application of another state's law,

notwithstanding New York choice of law principles.  *Am. Fuel. Corp.,* 122 F.3d at 134.  The

relevant language in the parties' Agreement is that the "Agreement shall be governed by and

construed in accordance with the laws of the State of New York."  Dkt. No. 71-1 at 2.  From the

plain language of the contract, the choice of law provision applies only to the Agreement's

construction and does not cover collateral claims arising from the Agreement such as claims

derived not from the Agreement but from the shares Plaintiff purchased pursuant to the

Agreement.  *See, e.g., Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc.,* 2007 WL 1701813,

at *7 (S.D.N.Y. June 12, 2007) (considering a similar clause to the one in the present case and

reaching the same conclusion); *Rondout Valley Cent. School Dist. v. Coneco Corp.,* 339 F. Supp.

2d 425, 440 (N.D.N.Y. 2004) (holding that the "choice of law clause should not govern the

piercing the corporate veil analysis because that issue is distinct from" the matters to which the

clause applies). Thus, the Agreement does not mandate an application of New York law for the

purposes of considering this breach of fiduciary duty claim.

Defendants are correct that the law of incorporation should govern this determination. "Under the internal affairs doctrine, claims concerning the relationship between the corporation, its directors, and a shareholder are governed by the substantive law of the state or country of incorporation." *New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Europe) B.V.*, 41 N.Y.S.3d 1, 6 (1st Dep't 2016); *see Friese v. Superior Court*, 36 Cal. Rptr. 3d 558, 569 (2005). The internal affairs doctrine is a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *New Greenwich Litig.,* 41 N.Y.S.3d at 6. Plaintiff has failed to rebut this presumption through a showing that this is the rare case in which the state of incorporation has little meaningful connection to the parties involved. *See, e.g., Deutsche Bank, AG v. Vik*, 40 N.Y.S.3d 23, 24 (2016) (applying New York law rather than the law of the state of incorporation to the question of alter ego liability where defendant had "scant contacts" with the state of incorporation and the allegedly wrongful acts occurred in New York); *Vaughn v. LJ Internat., Inc.*, 174 Cal. App. 4th 213, 226 (2009) (noting that the internal affairs doctrine may sometimes be ignored if "a business' books, records and principal operations" are located in a different state than that of incorporation).

In the alternative, Plaintiff lacks the requisite standing to assert these claims as direct actions. The claims here involve injury to Mantu, specifically the diversion of funds intended to invest in Mantu's research and products. Any harm to Plaintiff is derivative in nature. As a result, Plaintiff's claims must be brought by the corporation or on its behalf in a shareholder derivative suit, rather than through a direct action. *Ford Motor Credit Co., LLC v. Lewis Fam.*

*Enterprises, Inc.*, 2010 WL 2034794, at *7 (N.D. Cal. May 19, 2010) ("An individual lacks standing to bring an action where 'the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'") (quoting *Sutter v. Gen. Petroleum Corp.*, 28 Cal. 2d 525, 530, 170 P.2d 898, 901 (1946))); *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("[A]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually.").

Having only pled breach of fiduciary duty under California and New York law, the Plaintiff has thus failed to assert a cognizable legal claim. This Court thus dismisses Plaintiff's twelfth and thirteenth claims of breach of fiduciary duty under California and New York law.

Causes of Action No. 14 & 15: Declaratory Judgment of Alter Ego Status Under California law and New York law

Plaintiff seeks declaratory judgment that Mantu and Beezz are alter egos under California and New York law. Defendants move to dismiss this claim. Even assuming *arguendo* that California or New York law may govern this determination, the Plaintiff fails to allege facts sufficient to state a claim that Beezz and Mantu are mere alter-egos of one another.

As an initial matter, under both New York and California law, piercing the corporate veil does not constitute an independent cause of action. *See Network Enterprises, Inc. v. Reality Racing, Inc.,* 2010 WL 3529237, at *4 (S.D.N.Y. Aug. 24, 2010); *Hennessey's Tavern v. American Air Filter Co.*, 204 Cal. App. 3d 1351, 1358-59 (Cal. Ct. App. 1988). Rather, it is a means of imposing liability for an underlying cause of action. As such, to the extent Plaintiff

attempts to assert alter ego liability as an independent cause of action under either of body of law, its claim fails.

Moreover, Plaintiff has failed to establish sufficient facts to warrant piercing the corporate veil.  Under New York law, the corporate veil may be pierced, and the principal or a signatory held bound to the corporation's obligations, when the individual has used the corporate form "to achieve fraud, or when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."  *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)); *see also William Passalacqua Build. v. Resnick Dev.*, 933 F.2d 131, 138 (2d Cir. 1991) ("The critical question is whether the corporation is a 'shell' being used by the individual shareowners to advance their own 'purely personal rather than corporate ends.'") (citations omitted).  In determining whether to disregard the corporate form and to hold the individual liable to the corporation's obligations, courts consider "(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements or the corporation."  *Wrigley,* 890 F.2d at 600 (internal citations omitted).  "[A] plaintiff must do more than conclusorily state that the shareholder or officer exercises domination and control over the corporation."  *SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *11 (S.D.N.Y. Sept. 25, 2013) (quoting *Strojmaterialintorg v. Russian American Commercial Corp*., 815 F.Supp. 103, 105 (E.D.N.Y.1993)).  "Rather, a plaintiff must allege specific facts showing that the shareholder or officer is doing business in his or her individual capacity without regard to corporate formality."  *Id.*

Under California law, "[c]orporate separateness is respected unless doing so would work injustice upon an innocent third party." *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986).  To warrant piercing the corporate veil, a court must find "that the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Id.* (internal quotation marks omitted). "To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (alterations omitted) (citing *Doe, I v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).  "The plaintiff must show that the parent exercises such control over the subsidiary so as to 'render the latter the mere instrumentality of the former.'' *Id.*

Plaintiff does not sufficiently allege that Beezz is an alter ego of Mantu under either California or New York law.  In support of its claim of alter ego status, Plaintiff alleges that the individual defendants "exercise ultimate control over [both Mantu and Beezz] and direct the revenue and proceeds of each." Dkt. No. 68, ¶ 44.  "'Where pleading is permitted on information and belief' in a complaint that alleges fraud (and is therefore subject to Rule 9(b)), [courts] require that the complaint 'adduce specific facts supporting a strong inference of fraud.'" *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 82 (2d Cir. 2017) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  Although overlap in ownership or founding members may help support a conclusion that

two corporations are alter egos, this feature alone is an insufficient basis for establishing alter ego status. *Harris Rutsky*, 328 F.3d at 1135 (holding that "100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent"). As described above, the fact that a single group of owners or founders have chosen to organize their affairs through separate corporations does not make each corporation the alter ego of the other. Plaintiff's allegations as to Defendants disregard of corporate formalities are conclusory, and fail to provide sufficient details to support an inference that corporate formalities have indeed been disregarded. Dkt. No. 68, ¶¶ 45, 185. Even viewed in the light most favorable to the Plaintiff, the facts alleged are insufficient to establish a *prima facie* claim that Beezz or Mantu was a mere instrumentality of the other.

Cause of Action No. 16: Money Had & Received Under California law

Plaintiff asserts that Defendants received money intended to be used for the benefit of Plaintiff, and then transferred or used that money in ways not intended or authorized by the Plaintiff. Defendant asserts that this cause of action must be dismissed for failure to state a claim because Plaintiff received the Mantu shares for which it had paid, and so its funds were not converted or wrongfully retained. Dkt. No. 70 at 10.

Under California law, a claim for money had and received "lies wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter." *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011). "Money had and received is a form of restitution that applies when unjust enrichment occurred thanks to a contract or other transfer of 'a definite sum.'" *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S.Ct. 1702 (2017). "Although a legal claim, money had and received claims are governed by principles of

equity." *Coldwell Banker Real Estate LLC v. New All. Properties, Inc.*, 2017 WL 5635023, at *4 (C.D. Cal. June 15, 2017). "To plead money had and received, the plaintiff must establish three elements: (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the benefit of the plaintiff; and, (3) the defendant has not returned the money to the plaintiff." *Id.* A money had and received claim is "quasi-contractual or seek[s] relief under a contract implied-in-law." *Id.* Therefore, it "creates an obligation in the *absence of any agreement*, and a claim does not lie when an express agreement exists defining the rights of the parties." *Coldwell Banker,* 2017 WL 5635023 at *4 (internal citations and quotation marks omitted); *see also Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (holding that, under California law, actions in quasi-contract do "not lie when an enforceable, binding agreement exists defining the rights of the parties").

Plaintiff alleges that it provided money to Defendants, with the expectation that the funds would be invested in Mantu, a company of which it was partial owner. Plaintiff alleges that, contrary to its expectations, its investment in Mantu was then used for the benefit of majority shareholders and Beezz. Plaintiff's claim is undermined, however, by the fact that it relieved itself of control of the funds in question as part of an express and formal contractual agreement. Thus, the Agreement, rather than an implied contract, governs the relationship between Plaintiff and Defendants. The money had and received claim arising from a quasi-contract relationship cannot stand and the Court dismisses Plaintiff's sixteenth cause of action accordingly.

Cause of Action No. 17: Quasi-Contract Under New York Law

Plaintiff asserts that Defendant received and benefited from money belonging to Plaintiff, and that principles of equity and good conscience should not permit Defendant to keep that money. Defendant moves to dismiss this cause of action for failure to state a claim.

Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987). "A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." *Id.* "Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Id.*

Where the "relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions," as is the case here, the appropriate course of action is dismissal of the plaintiff's quasi contract cause of action. *Id.* Plaintiff fails to explain what benefits Defendants received from their purported misconduct other than what was due under the Agreement. *See BDO USA, LLP v. Stiles*, 2021 WL 65433, at *4 (N.Y. Sup. Ct. Jan. 07, 2021) (dismissing plaintiff's claim of quasi contract on this basis). Plaintiff's seventeenth cause of action is accordingly dismissed.

Cause of Action No. 18: Voidable Transfer (Actual Intent) under Cal. Civ. Code § 3439

Plaintiff alleges that Defendant violated Cal. Civ. Code § 3439 ("Section 3439"), which "permits defrauded creditors to reach property in the hands of a transferee." *Oracle Am., Inc. v. Appleby*, 2016 WL 5339799, at *7 (N.D. Cal. Sept. 22, 2016) (quoting *Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 840–41 (2009)). Defendant moves to dismiss Plaintiff's eighteenth cause on lack of standing, arguing that the statute protects only creditors and Plaintiff is not a creditor of Mantu.

Section 3439 provides that "[i]n an action for relief against a transfer or obligation under this chapter, a *creditor*, subject to the limitations in Section 3439.08, may obtain [*inter alia*]: (1) [a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Cal. Civ. Code § 3439.07(a) (emphasis added).  The statute defines a creditor as a person with a "claim" of a debtor, defining "claim" as "right to payment."  Cal. Civ. Code. § 3429.01(b)-(c). Plaintiff was a shareholder in Mantu, having purchased ownership in exchange for shares in the corporation.  *Bauer v. Comm'r,* 748 F.2d 1365, 1367 (9th Cir. 1984) ("[t]he determination of . . . debt or equity depends on the distinction between a creditor who seeks a definite obligation that is payable in any event, and a shareholder who seeks to make an investment and to share in the profits and risks of loss in the venture").  The law generally distinguishes between equity investors and creditors, and Section 3439 provides protections only for the latter; the Plaintiff has not given the Court reason to depart from that rule in this case.  Cause of Action No. 18 is thus dismissed.

Cause of Action No. 19: Restitution for Unjust Enrichment

Plaintiff's nineteenth cause of action is "Restitution for Unjust Enrichment."  Dkt. No. 68 at 36.  Defendants move to dismiss cause of action number nineteen on the grounds that restitution is not a cause of action.  Defendants are correct that restitution alone is not a cause of action.  *New York v. SCA Servs.*, 761 F. Supp. 14, 15 (S.D.N.Y. 1991) ("[R]estitution is the remedy for unjust enrichment, not a separate basis for liability.").

Even assuming, *arguendo*, that Plaintiff brought a claim under the more proper cause of action of unjust enrichment, as opposed to restitution, the Court would still dismiss it.  Unjust enrichment is a claim of quasi-contract that, for the reasons described above, must generally be dismissed where a written contractual agreement defines the relationship between the parties.

*See, e.g., IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 879 N.Y.S.2d 355, 361 (2009)

("Where the parties executed a valid and enforceable written contract governing a particular

subject matter, recovery on a theory of unjust enrichment for events arising out of that subject

matter is ordinarily precluded"); *Goldstein v. CIBC World Mkts. Corp*., 776 N.Y.S.2d 12, 14 (1st

Dep't 2004) ("A claim for unjust enrichment, or quasi contract, may not be maintained where a

contract exists between the parties covering the same subject matter.").  Consequently, this Court

dismisses any claims for restitution and, if it was pled, unjust enrichment.

## CONCLUSION

With respect to those parties over whom this Court has personal jurisdiction—Mantu,

Cayre, and Moyal—the motion to dismiss is granted without prejudice to the filing of an

amended complaint solely with more particularized allegations as to the fraud claims.  If Plaintiff

does not file an amended complaint within 30 days of this opinion, the Court will direct the Clerk

to close this case.

With respect to the parties over whom this Court does not have personal jurisdiction—

that is, Beezz, Eliezer, Niryaev, Jdanov, Raskansky, and Hamo—the Court has identified an

issue that no party has addressed.  The Court has determined that it does not have personal

jurisdiction over those defendants under New York law.  However, Plaintiff originally sued those

defendants in California and it is only as a result of a transfer order entered before those

defendants were served that the case against them is in this Court.  The Court has not determined

whether those defendants would have been subject to personal jurisdiction in the Court where

they were originally sued.  The California court also did not address that issue prior to

transferring this case.  Nor has the Court determined whether, if it dismisses the case rather than

transferring it back to the Northern District of California, any applicable statute of limitations will have run.  These are matters that the parties may fruitfully discuss between themselves.  In the absence of an agreement between the parties as to a suggested disposition, the parties may submit simultaneous briefs on the suggested disposition of the case against these defendants based on the Court's opinion within 30 days of this Opinion and Order.  If no briefing is submitted, the Court will dismiss all claims against Beezz, Eliezer, Niryaev, Jdanov, Raskansky, and Hamo.  The Clerk of Court is respectfully directed to close the pending motion at Dkt. No. 69.


SO ORDERED.



Dated: March 10, 2021
    New York, New York

                                               LEWIS J. LIMAN
                           United States District Judge